## THE CITY OF EMPORIA v. M. W. GILCHRIST.

1. CITY OFFICERS — *Repairing Streets — Interference of Court.*    Where municipal officers or boards are authorized by law to exercise their discretion and judgment in repairing streets and sidewalks, the courts, in the absence of fraud, ought not to interfere with their action, while they continue within the scope of the powers conferred upon them by law.

2. SIDEWALK — *Injunction, When not Granted.*    A sidewalk had been condemned as unsafe by the duly constituted authorities of a city, and the owner of the property abutting upon the sidewalk failed to remove and rebuild it in the time given him under an ordinance of the city, after due notice that unless he did so remove and rebuild within the time named, the city would do so at his expense.    *Held,* That after the expiration of such time the city is authorized to remove and rebuild in its own way; and *further held,* that an injunction ought not to be allowed against the city, when it begins to remove the old sidewalk, for the reason that the material for the new one is not upon the ground ready for use.

### *Error from Lyon District Court.*

M. W. GILCHRIST commenced this action against the city of Emporia to obtain an injunction forbidding it from removing the sidewalk in front of his livery barn in said city. On this sidewalk were two raised platforms, or approaches, extending from his barn to the street. He obtained a temporary injunction upon the 16th day of March, 1886, and on the 20th, by agreement of the parties, a motion to dissolve the injunction was heard before the judge of the Lyon county district court, at chambers. On the hearing of the motion the plaintiff admitted that the street upon which his lot abutted was the property of Lyon county; that this sidewalk had been built along the entire length of plaintiff's property, and that the platforms in question had, for a long time prior to the commencement of this action, been built across the sidewalk and into said street; that said street was one of the principal streets of the city, and that a great deal of travel passed over it; that in the fall of 1885 a committee on streets and alleys, having full power to inspect the streets, alleys and sidewalks of said

city, and to condemn the unsafe portions thereof, did duly inspect and condemn all of the entire sidewalk along and adjoining plaintiff's property, and duly reported in writing such condemnation to the mayor and council; that at the time of said condemnation and report thereof the city had an ordinance theretofore duly passed and in force authorizing such condemnation, and upon notice thereof to the mayor and council, and further notice to the owner of the lot, the sidewalk so condemned could be removed, and a new one built in its place; that notice to plaintiff was given in accordance with the ordinance of said city, on the 14th day of December, 1885, and also notifying him that such sidewalk must be removed within two days, and must be rebuilt within thirty days, and that if it was not so rebuilt by him, the city of Emporia would build the same, and tax the cost thereof to his said property.

In addition to the admissions of the parties to this action, there was oral testimony introduced, fairly establishing the fact that these approaches were above the level grade of the sidewalk, about twelve inches at the outer portion or curb of the sidewalk, and about twenty-four inches at the inside of the sidewalk and against the barn in one instance, and in the other about six inches above at the curb, and seventeen and a half at the inside of the sidewalk; that they were connected by a raised platform on the sidewalk, not so wide as the sidewalk; that it was necessary to make one step up in order to get upon the approaches; that they were in bad condition for anyone to pass over, and were not considered very safe; that in going toward the west travelers had always been compelled to get up on the approaches by steps; some went around in preference, and women with baby-carriages generally did so. It was also in evidence, and undisputed, that the only means of ingress into and egress from the barn were over these raised approaches across the sidewalk; that the plaintiff ran a number of hacks, omnibuses and baggage-wagons, besides keeping buggies and horses for hire, and also private horses; and that it was necessary in order to get up to the floor of the barn, to have these raised approaches.

It was also shown that when the plaintiff received notice to remove the sidewalk and rebuild it, he made a contract with one whose business it was to lay down sidewalks, to furnish him with stone, and that such party had prepared a large portion of the stone necessary for the new sidewalk, but owing to the weather he had not delivered it, nor had the city any material on the ground to rebuild the sidewalk. The prayer of the petition of the plaintiff was that a restraining order be allowed, forbidding the city from "tearing up and removing either of said approaches and inclines until the material for the construction of the proposed new sidewalk should be upon the ground ready to be placed."

The judge overruled the motion to dissolve the temporary injunction. This ruling the defendant *City* brings here for review.

*Randolph & Sanders,* for plaintiff in error.
*Buck & Feighan,* for defendant in error.

Opinion by HOLT, C.: The judge refused to dissolve the temporary restraining order. In this we believe he erred. From the admissions made by plaintiff on the trial, and the evidence introduced, it appears to be well established that the raised platforms or advances to plaintiff's barn were obstructions to a free and safe passage along the sidewalk. The plaintiff himself, in giving his evidence, says:

"In getting up to the inclines, you step to the top of the curb, and then one step to the top of the incline;" and "there was danger of one stumbling and falling if he did not keep his eyes open."

The business interest of an individual ought not to be set above that of the public. The sidewalk was for the comfort and convenience of the public generally, not alone for the benefit of plaintiff. From the testimony it is shown that the inclines might have been built within plaintiff's barn, perhaps at some additional expense, and when completed might not have been as convenient for plaintiff's use as they would have

been if allowed to remain, yet they would have furnished a reasonably safe means of ingress into and egress from his barn. After the notice had been served he had ample time to prepare for such change. The city, in accordance with its ordinances, had notified plaintiff that he must tear up and rebuild the sidewalk in front of his property, more than three months before it commenced to remove it. It was a much longer time than the ordinance required, and it was not only the right of the city under the ordinance to rebuild, but it was its duty to see to it that a sidewalk pronounced unsafe should be replaced by a safe one.

Ordinarily, where municipal officers or boards are authorized by law to exercise their discretion and judgment in establishing or repairing streets and sidewalks, the courts, in the absence of fraud, will not interfere with their action, while they continue within the scope of the powers conferred upon them by law. In this case it appears that ample authority was given the committee by the ordinances of the city, and that it had good reasons for pronouncing the old sidewalk unsafe and ordering a new one built. Under the evidence introduced the court should not have interfered with the city in removing the sidewalk. (High on Injunctions, 1270.)

It is not an argument worthy of consideration that because the inclines had been there for a long time, for that reason they should be allowed to remain. But the plaintiff says that there could have been no harm done to the public under the order of the court; that plaintiff only asked that they be retained until the city had its material upon the ground ready to build the new walk before it removed the old one. We think there is not much force in this objection. The city has the right to build its own sidewalks in its own way, after it has given the lot-owner ample opportunity to put in the sidewalk abutting upon his property. If he fails to avail himself of the privilege extended to him by the city, by putting in sidewalks in his own way within the time provided by the ordinance, then he cannot be heard to complain if the city puts down the sidewalk in front of his property in a reason-

able time.   For the reasons given herein, we recommend that the order of the district judge refusing to dissolve the temporary restraining order be reversed.

By the Court: It is so ordered.

All the Justices concurring.