THOMAS SHANKS *et al.* v. JACOB PEARSON, *as Road Overseer, etc.*

No. 12,886.   (71 Pac. 252.)

SYLLABUS BY THE COURT.

1. OFFICE AND OFFICERS—*Road Overseers.* Road overseers are primarily and specially charged with the repair of public highways, in which, while acting within the scope of their authority, they are vested with a very broad discretion, with which courts will not interfere, except in cases of fraud, or where there is a manifest or gross injustice which would constitute an abuse of discretion.

2. ——— *Showing of Bad Faith Permissible.* Testimony tending to show that the repair proposed to be made on a public road, which would operate as a special injury to another, is being made to subserve private and personal ends, and further tending to show bad faith on the part of the road overseer, is admissible in evidence in an action to enjoin the making of such repair.

Error from Mitchell district court; R. M. PICKLER, judge. Opinion filed January 10, 1903. Reversed.

*F. T. Burnham, Clark A. Smith,* and *B. A. Mason,* for plaintiffs in error.

*Park B. Pulsifer, D. M. Smith,* and *J. E. Tice,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This case involves the power and duty of a road overseer in repairing, draining and improving highways. The plaintiffs, who owned a farm in Mitchell county, sought to enjoin the road overseer, who was proceeding to dig a deep ditch in front of their residence and farm. The township trustee was named as a defendant, but, as he disclaimed any connection with the making of the ditch, the plaintiffs consented that judgment be rendered

against them for costs, so far as the trustee was concerned, and he went out of the case.   The real controversy was not affected by the withdrawal of the trustee, as plaintiffs contend.   While he has general supervision of the pecuniary affairs of his township, and directs the application of township moneys for road purposes, the duty of maintaining and repairing highways is not cast upon him.   The legislature, which has supreme control in the matter of highways, appears to have placed this authority upon the road overseer.   (Gen. Stat. 1901, § 6027.)   That statute, which was recently amended and reenacted, is the latest expression of legislative purpose, and confers express authority upon the road overseer.   Nothing in that provision indicates that the township trustee is to share in the discretion given to the road overseer as to the manner of making repairs.   In *Hari v. Ohio Township*, 62 Kan. 315, 62 Pac. 1010, the relative duties of trustee and road overseers were considered, and it was said :

"The road overseers of a township are primarily and specially charged with the repair of the public highways.   The township trustee is not charged with that duty, except under the provisions of section 7430 of the General Statutes of 1899 (which relates to the matter of obstructions and their removal). . . . Only under it are any specific duties in relation to the repair of highways imposed on the trustees.   There are other statutory provisions quite general in terms, and some of them vague in meaning, which charge a township trustee with the oversight and supervision of the road overseers in the performance of their duty, but in general, and as just stated, it may be said that the trustee is nowhere, except in the instance mentioned, specially charged with the observation of the condition of the highways, or with the repair of defects existing in them."

Reference is made to chapter 168, Laws of 1885 (Gen. Stat. 1901, §§ 7822–7829), which constitutes the township trustee, clerk and treasurer a board of highway commissioners, and employs some general language as to the construction and maintenance of highways, but that act appears to relate mainly to the construction of permanent roads by the use of gravel, rock, or other material, which work is to be conducted under the supervision of a general superintendent, or by the letting of contracts to the lowest responsible bidder. Nothing in the act indicates a purpose to limit the power and discretion of the road overseers as conferred in the act in relation to roads and highways.

As the power conferred on road overseers is general, it necessarily vests them with a broad discretion as to the manner of making repairs. The presumption will be, until it is overcome, that they act within the limits of the law and reasonably exercise the discretion vested in them. While the discretion conferred is broad, and courts are slow to interfere with its exercise, it cannot be arbitrarily or dishonestly exercised. On the other hand, the judgment and discretion should be intelligently and honestly exercised, with a view to carry out the purpose of the legislature and conduce to the public good. If there are several methods of repairing a road, the overseer may select any one of them, that is, within reason, although another may be preferable. The general rule is that when such officers act within the scope of the power conferred on them there will be no judicial interference with their discretion and judgment, in the absence of fraud or some manifest or gross injustice which would constitute an abuse of discretion. (*City of Emporia v. Gilchrist*, 37 Kan. 532, 15 Pac. 532.)

The testimony produced on the trial as to the plan and purpose of the overseer in digging the ditch in question is meager and unsatisfactory, and, therefore, we are unable to determine the ultimate rights of the parties at this time.   Testimony, however, was offered and refused which tended to show bad faith on the part of the officer, and for this reason there must be a reversal of the judgment.   There was an offer to prove that landowners living in another county, who were interested in the ditch, had contributed money to the road overseer, and, to secure the digging of the ditch, had employed counsel and procured bondsmen in carrying on this litigation.   Other testimony which attacked the good faith of the officer and tended to show an abuse of discretion was excluded by the court upon the ground that evidence to impeach his good faith could not be received.   These offers were broadly made, and the plaintiffs may be unable to sustain their claims, but no objection was made to the form of the offer, and, as the reason given by the trial court necessarily excluded all testimony impeaching good faith, it must be held that prejudicial error was committed.

The judgment will therefore be reversed, and the cause remanded for a new trial.

All the Justices concurring.