JOHN MURPHY, *Appellant,* v. FAIRMOUNT TOWNSHIP
et al., *Appellees.*

No. 18,025.

#### SYLLABUS BY THE COURT.

HIGHWAYS — *Insufficient Culvert — Nuisance — May be Abated.*
The commissioners of highways are vested with power to exer-
cise their judgment and discretion in planning and construct-
ing a culvert. But when such culvert has been constructed
with an opening so insufficient that surface water is thrown
back upon the land of an abutting owner to his repeated dam-
age, rendering the structure a continuing nuisance, it is the
duty of such commissioners, upon proper notice and demand,
to abate the same by remedying the defect, and upon failure
they will be required so to do by judicial action.

Appeal from Leavenworth district court. Opinion
filed June 7, 1913. Reversed.

*Arthur M. Jackson,* of Leavenworth, for the appel-
lant.

*Lee Bond,* and *M. N. McNaughton,* both of Leaven-
worth, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued the township and town-
ship officers to recover damages alleged to have been
caused by overflow on account of a culvert constructed
with an insufficient passageway for water, and also
prayed that the defendants be permanently enjoined
from maintaining such culvert in its present defective
condition. A demurrer to the plaintiff's evidence was
sustained, and the defendants electing not to introduce
any testimony the injunction was denied and the plain-
tiff appeals.

The question of damages is ruled by *Fisher v. Town-
ship,* 87 Kan. 674, 125 Pac. 94, and cases there cited,
holding that subordinate agents of the state are not,

under the circumstances here shown, liable for injuries caused by their negligence.

The plaintiff insists, however, that he is entitled to an injunction on the theory that the township and its officers should not be allowed to maintain a culvert with an opening so small that damages from overflow are likely to occur from time to time. The defendants insist that there was no testimony proving the danger of such injury and that the plaintiff, without protest, permitted the work to go ahead and the money for the culvert to be expended and should not now be heard to demand destruction and rebuilding.

The plaintiff testified that the water backed up above the culvert and extended about twenty rods north thereof, ran over the road and down across his land, and had cut a channel thirty or forty feet from the main channel, which started in 1909, after the building of the culvert; that in May, 1909, when it was raining, half of the water was not going under the culvert or into the main channel until after it backed up and flowed over the road north of the culvert; that to his knowledge the water had come across nine times since the culvert had been built, the rains at these times being ordinary ones; that he had no trouble with the water before the culvert was put in except once, in 1907, when trouble arose from an obstruction in a ditch; that when there was a wooden bridge at the place before the culvert was constructed it had about three times the capacity; that he never lost any crops before the culvert was built; that since its construction about a foot of the surface had been washed off over about four acres. A civil engineer, who had been county surveyor, testified that the area in the opening of the culvert was thirty-nine square feet, while the ditch on the lower side was two hundred square feet in area; that the drainage area above the culvert is about four hundred acres, and that to drain six hundred forty acres the opening should be one hundred square feet.

Other witnesses testified as to the overflow and damage.

As to the right of plaintiff to maintain injunction, one theory is that the highway commissioners act only as a local branch of the state government, and not being convicted of fraud, they are not liable for having exercised their judgment in reference to the size of the opening in the culvert. The other theory is that the landowner rightfully presumed that the township officers would not only do their duty free from fraud, but free from patent blunders and mistakes in engineering, so that the culvert would not amount to a continuing nuisance to him; that having a right thus to assume, he naturally and properly refrained from interfering with the progress of the work and made no complaint until it was ascertained that the opening was so small that the culvert necessarily brought upon him serious damage, which damage must continue to occur so long as the structure remains in its present inadequate condition; that although he may not under the settled rules of law be entitled to recover damages for the injuries already sustained, there is no reason why he may not enjoin the continuance of such nuisance.

In *Oliphant v. Comm'rs of Atchison Co.*, 18 Kan. 386, a purchaser of land over which a road was used and traveled but which he claimed had never been legally appropriated to public use attempted to fence up such road, when the authorities resisted his attempt, and it was held that injunction was a proper remedy to restrain their further interference. In *Township of Quincy v. Sheehan*, 48 Kan. 620, 29 Pac. 1084, holding that a township is not liable under the statute for loss arising from failure to erect and maintain watermarks at fords, on the ground that such liability could only be created by the city, it was said:

"The neglect of the overseer to perform these duties may create a liability against him for injuries resulting from his failure; but we do not think that it was in-

tended to impute such negligence to the township nor impose a liability upon the township." (p. 623.)

It will be noticed that in this case the township is the party defendant, and also the board of trustees and board of commissioners of highways. In *Shanks v. Pearson*, 66 Kan. 168, 71 Pac. 252, it was decided that road overseers while acting within the scope of their duty have a very broad discretion, with which the courts will not interfere except in cases of fraud or some "manifest or gross injustice which would constitute an abuse of discretion." (Syl. ¶ 1.) It was also held that in an action to enjoin certain repairs about to be made on a public road it was competent to show that they would operate as a special injury to another and were being made to subserve private and personal ends as tending to show bad faith. In the opinion it was said:

"If there are several methods of repairing a road, the overseer may select any one of them that is within reason, although another may be preferable. The general rule is that when such officers act within the scope of the power conferred on them there will be no judicial interference with their discretion and judgment, in the absence of fraud or some manifest or gross injustice which would constitute an abuse of discretion." (p. 170.)

In *Silver v. Clay County*, 76 Kan. 228, 91 Pac. 55, an action for damages for the removal of a bridge by the county commissioners, while denying the relief sought, it was said:

"According to the allegations of the petition the removal of the bridge by the county commissioners was illegal and imposed great hardship upon the plaintiff, and he would, perhaps, under the authority of *Greeley Township v. Comm'rs of Saline Co.*, 26 Kan. 510, 514, have been entitled to enjoin the act, or may even yet not be without a remedy." (p. 229.)

In *Shawnee County v. Jacobs*, 79 Kan. 76, 99 Pac. 817, it was alleged that the county board had so con-

structed a bridge as to cast water upon the plaintiff's land, and it was held that he could not recover damages under the statute. (Gen. Stat. 1901, § 579, Gen. Stat. 1909, § 658.) On rehearing it was expressly said (p. 82) that the pleadings were in such condition that it was impossible to determine whether or not the plaintiff was entitled to an injunction, and it was suggested that the remedy, if any, was in the district court. In *The State v. Railway Co.*, 81 Kan. 430, 105 Pac. 704, it was held that an abutting owner could not enjoin the construction of a subway in a city which would injure him, for the reason that his proper remedy was an action for consequential damages. Section 9633 of the General Statutes of 1909 provides concerning the highway commissioners that:

"The work on roads shall be done timely, and in accordance with the best-known methods of road-making —by proper grading, and thorough drainage by tile or otherwise, as may be expedient, or by the application of gravel, rock, or other material."

Section 9634 provides:

"In order to insure efficiency, they may employ a general superintendent outside their own body to work and execute their orders, or they may let contracts, appoint overseers, employ laborers, or such other agencies as they may deem expedient and most to the interest of the township."

If any inference is to be derived from this language it is that the commissioners are not to build culverts with utter disregard of the effect they will have on inhabitants of the township owning adjoining lands.

The testimony clearly tended to show that already a foot of soil covering considerable ground has been taken from the plaintiff; that his crops have been injured; and that such injuries have been occasioned by the character of the culvert in question. In *Young v. Com'rs of Highways*, 134 Ill. 569, 23 N. E. 689, it was held that the discretion of the commissioners could not

be interfered with unless they invade some private right of a citizen; that when they undertake to drain a public highway they are governed by the same rules as adjoining landowners who seek to drain their own lands, and they have no right to divert the water from its natural course and turn it upon the land of another, and if they attempt to do so they may be enjoined at the suit of the owner.    In *Bills v. Belknap*, 36 Iowa, 583, it was held that a road supervisor may be enjoined from removing trees standing in the highway in front of the owner's premises unless such removal is demanded by public necessity, and that his determination is not so far judicial that it can not be reviewed and controlled.    In the opinion the court said:

"He may certainly be so controlled in his acts, as an officer, that the property of the citizen may not be taken or destroyed when the public interest does not demand it, and he may be restrained from inflicting injury, wantonly or unnecessarily, to any one, when attempted under color of his office."    (p. 586.)

In *Bolton v. McShane*, 67 Iowa, 207, 25 N. W. 135, it was decided that equity will enjoin road supervisors from removing or interfering with fences, hedges, watercourses and the like in discharge of their official duties.    In *Frances v. Town of Sharon*, 143 Iowa, 730, 121 N. W. 523, it was ruled that the construction of culverts in streets of a city so as to carry the water and filth from private drains upon the land of an abutting owner is a nuisance for which the city is liable in damages.    In the opinion it was said:

"The creation and maintenance of a nuisance is very clearly not a governmental function, and the authorities are practically of one voice on the subject."    (p. 732.)

This court has gone only to the extent of holding that counties and townships in instances like this are not required to respond in damages for injuries already caused; not that they may be permitted to continue a

nuisance or that they may not be enjoined from so doing.

In *Dennis v. Osborn,* 75 Kan. 557, 89 Pac. 925, it was held that an error of judgment by the road overseer as to the plan of improving a highway adopted in good faith would not of itself be a ground for enjoining the improvements, but it was ruled in the syllabus that:

"The officers must act with reason and prudence in making such improvements, and can not collect a considerable quantity of water and unnecessarily and unreasonably throw it in a body upon the land of a private owner to his injury."   (Syl. ¶ 3.)

One reason given in the opinion (p. 559) for refusing the injunction was that under the law as it then stood the owner could protect himself against surface water. But this reason no longer exists.   (Laws 1911, ch. 175; *The State, ex rel., v. Zerbe,* 87 Kan. 300, 124 Pac. 160.) It was also said (p. 559) in the opinion that the proposed improvement would not increase the flow or impose a greater burden upon plaintiff's land than it bore before the highway was established.   Here the very opposite is true, according to the testimony already referred to.   The plaintiff also testified:

"If there was no obstruction in this ditch it would carry the water.   I was born and raised right there on the Creek when there was no bridge there at all and it has carried everything that has come down it to my knowledge for the last 35 years.   I never lost any crops before the culvert was built.   We have had no unusual rains during the last 2 or 3 years, but just ordinary rains.   When my land has been overflowed the rains were ordinary heavy rains.   The land that is damaged is some of my best farming land.   That land would produce 30 bushels of wheat per acre and from 70 to 80 bushels of corn to the acre in ordinary crop years. It is where I produced my best corn and wheat.   Since this land has been flooded it is practically worthless as farm land."

The action was begun February 8, 1911.   The record shows that November 12, 1910, the township trustee

was notified in writing that the culvert was too small and was causing overflow and damage and that unless removed or made of sufficient capacity suit would be brought. It can not be that the legislature intended under such circumstances that the highway commissioners should continue a nuisance of this character. While it has been determined in this state that a mere consequential damage does not amount to a taking within the meaning of section 4 of article 12 of our constitution, or the fifth amendment to the federal constitution, we can find no warrant in the statutes or in the common law for permitting a quasi municipal corporation or its officers so to use their own official rights as thus to injure the property of another.

Having the question now squarely presented, we hold that while the courts may not control the judgment and discretion of the highway commissioners in planning and constructing a culvert, nevertheless, when time demonstrates its utter insufficiency and its certainty of causing continuous or repeated damage to the abutting landowner, and notice of such condition is brought home to such officers, it then becomes their duty to abate such nuisance, and upon failure they will be required so to do by judicial action; that for such officers knowingly to permit such nuisance to continue is not an exercise of official duty but a disregard thereof amounting to bad faith. They have control of the highway situation and are therefore and thereby charged with the duty to treat it upon principles of fairness and not of oppression. The ancient and eminently just maxim applies that one shall not so use his own as to injure another's. The evidence quoted was sufficient to take the injunction branch of the case past the demurrer which the trial court erred in sustaining.

The ruling is therefore reversed and the cause remanded for such disposition as all the evidence shall upon a full hearing warrant.