No. 18,469.

THEODORE MARTS, *Appellee*, V. A. J. FREEMAN,
*Appellant*.

SYLLABUS BY THE COURT.

HIGHWAY—*Surface Water—Ditch Constructed by Road Over-
seer — Obstructed by a Landowner — Overflowing Another's
Land—Damages Recoverable.* A public road extended east
and west, crossing a valley through which a creek flowed.
The road was low and subject to overflow from surface water
from the north at a depression about half a mile west of the
creek. Complaints were made to the township board of the
condition of the road. M., whose land abuts upon the south
side of the road at the depression, urged that a ditch should be
constructed from a culvert at that place to the creek. Upon
a view of the premises the board believed that the proposed
ditch would benefit the road, but doubted their power to con-
struct it. Thereupon, with M. and other people of the vicinity,
they presented the matter to the county commissioners, who
instructed the board to take the water off the road. The
county attorney advised that the work should be done under
the direction of the road overseer. The ditch was constructed
accordingly, under the supervision of the overseer, who dug
it so far as could be done with a road grader, and it was then
finished by M. at his own expense, as he had agreed to do be-
cause of anticipated benefits to his own land. The ditch was
a substantial improvement to the road and also of material
benefit to M.'s land. It was kept open for ten years, when F.,
who owned land along the creek abutting on the south side
of the road, obstructed it by a dam, causing the water to
overflow M.'s land and injure his crops. At the time of the
obstruction, the ditch, by action of the water had become so
deep and wide that it cut into and materially injured F.'s land.
It is held:

(1) That the road overseer was vested with authority to
construct drains in public highways. His discretion in exer-
cising this authority could not be controlled by a court except
in case of fraud or bad faith.

(2) In exercising this authority the fact that the over-
seer was advised or directed by the township trustee, town-
ship board or county commissioners did not invalidate his act.

Marts v. Freeman.

(3) That the improvements were urged by and resulted in benefits to a landowner did not impair the right of the constituted authorities, acting in good faith, to make it for the use and benefit of the public.

(4) The fact that a watercourse so created is an artificial one affords no justification for obstructing it where it exists by lawful authority, although the obstruction causes the water to flow where it did before the ditch was opened.

(5) It must be presumed that any damages to a landowner consequent upon such an improvement, properly made, was paid for when the right of way was appropriated, and the defendant, having no right to recover damages caused by opening and maintaining the ditch, has no right to obstruct it.

(6) An individual who suffers special injury from a public wrong different from that suffered by the public at large may recover his damages therefor against the wrongdoer. This principle is applicable to the obstruction of the ditch referred to.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed December 6, 1913. Affirmed.

*Thomas Dever,* of Junction City, for the appellant.

*G. W. Hurd,* and *Arthur Hurd,* both of Abilene, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an appeal from a judgment for damages to growing crops caused by the obstruction of a ditch in a public road. The defendant alleges that the ditch was wrongfully opened by the plaintiff's father, John Marts, to the defendant's injury and without lawful right or authority, and prayed for an injunction to restrain the plaintiff from maintaining it.

At the time the ditch was opened the plaintiff's father owned abutting land on the south side of the road referred to. The defendant owned land abutting on the north side of the road. The west boundary of the defendant's land is an extension north of the east boundary of the Marts land. The defendant also

owned another tract south of the road. Chapman creek runs southwardly through both of the defendant's tracts. The road was established in the year 1893. The next year a culvert was placed in the road at a low place crossing the road on the John Marts land, afterward occupied by the plaintiff, and the land next north of it. The culvert is about two thousand four hundred eighty feet west of a bridge over Chapman creek. The low place begins north of the road, and extending southeastwardly and growing wider crosses the east line of the Marts land upon an adjoining tract of eighty acres. The surface drainage of approximately six hundred fifty acres north of the road is into this low place, finding its way, after filling the depression, to Chapman creek or into a branch flowing into that creek about a mile below the bridge.

In the year 1900 complaints were made to the township officers of water standing along and upon the road which extends across a valley for a considerable distance west of the creek. The plaintiff's father was desirous of having a ditch constructed along the road which would serve to divert the water passing through the culvert from flowing upon his land. The township trustee and the township board visited the place, and upon examination believed that such a ditch would be a benefit to the road, but doubted their right to construct it without authority from the county commissioners. Later the county commissioners, at a meeting held when the township board were present, investigated the matter and instructed that board to take the water off the road and to make a ditch for that purpose. Mr. Marts, senior, was present and agreed to pay the expense of making the ditch and also agreed to put a bridge across it to Freeman's south tract. The county attorney, who was also present, advised that the work should be done under the direction of the road overseer. Afterwards the township board directed the road overseer to put the ditch on the south side of the road,

the defendant objecting to having it made on the north side. The overseer constructed the ditch as deep as it could be made with a road grader. The surface of the ground at and near the bank of Chapman creek being about four feet higher than at the culvert it was found necessary to have the ditch made deeper, and Mr. Marts agreed to deepen it accordingly at his own expense. He performed the work, making the ditch about six feet deep at the outlet, and about two feet deep at the culvert. He threw back the material excavated from the ditch, along its south side and upon his land at the road side, thereby forming a low dike which served to hold the water in the ditch and prevent it from overflowing upon his land except in times of heavy rains or freshets. He also built a bridge for the defendant as he had promised, near the northwest corner of his eighty-acre tract, which the defendant used for many years in going to and from his land. That tract has a frontage of about three hundred twenty feet on the road west of the creek. The ditch was a substantial improvement of the road and carried off the water from ordinary rains. In freshets, however, it still overflowed the low places upon adjacent lands, and at times the dike has been washed away. The defendant repaired the bridge over the ditch at different times, and at one time dug a little ditch across the road to carry surface water from his north tract into the ditch. Evidence was given tending to show that he also assisted in digging the ditch in question.

The ditch grew wider and deeper toward its mouth by the action of the water until it was fifteen or twenty feet deep and thirty feet wide at the outlet, having cut into the defendant's land five or six feet near the creek, narrowing toward the west to a point, and taking away about one hundred twenty feet of his fence, and also cut into the road near the bridge. The township authorities restored the road by filling the cut and protecting the north side of the ditch. The defendant, on

April 10, 1910, after removing what was left of the bridge built for his use, which had fallen down, filled up the ditch at that point, where it was eight or nine feet wide, making a dam to the height of the surface of the ground. He also made another dam across the ditch on the same land. These obstructions caused an overflow upon the plaintiff's lands resulting in damages, for which he sued; they also caused an overflow of the road near the culvert.

No record appears to have been made of any of the orders or proceedings of the township board or of any of the officers relating to this ditch.

The plaintiff requested an instruction to the effect that any person who should unlawfully obstruct a county road was liable for resulting damages to any person injured thereby. The defendant, on the other hand, asked for an instruction to the effect that if, after the road overseer had graded the road, the plaintiff dug the ditch and built the dike, in order to prevent surface water from flowing upon his land, such acts were an unlawful diversion, and the defendant would have the right to use such means as he saw fit to prevent such water from encroaching upon his premises.

The court refused these requests and instructed the jury, in substance, that if the ditch and dike were constructed by Marts with the consent and approval of the road overseer, the township trustee and township board, in conjunction with these authorities, for the common purpose of protecting and improving the road and protecting his land, and the defendant filled up the ditch, and that it was not necessary that he should do so in order to protect his own land, and that such filling caused an overflow which injured the plaintiff's crop which would not have occurred but for such obstruction, the defendant was liable for the resulting damages. Following this another instruction was given, to the effect that if the defendant obstructed the ditch to divert surface water which was flowing upon his

own land, thereby injuring it, and the surface water would not have otherwise reached his land, the plaintiff could not recover.

Various specifications of error are presented but they all depend upon a few underlying propositions which will now be considered. It is contended that neither the township officers nor the county commissioners had any authority to authorize the construction of the ditch, although it is suggested that the road overseer may have had that authority under the provisions of section 7285 of the General Statutes of 1909. The statute making the township board commissioners of highways for the township did not take effect until after the ditch was opened.

No specific duty respecting the drainage of roads appears to have been enjoined upon township trustees, although in the act relating to township officers (Gen. Stat. 1909, §§ 9584-9590) the trustee is charged generally with the duty to see that the road moneys are properly applied, also with the duty to prosecute for violations of the road laws, and is given the care and management of the property of the township, and superintendency of its interests. Road overseers are primarily and specially charged with the repair of public highways. Necessary drainage is an ordinary and necessary incident of this power. (*Hari v. Ohio Township*, 62 Kan. 315, 62 Pac. 1010; *Shanks v. Pearson*, 66 Kan. 168, 71 Pac. 252; *Dennis v. Osborn*, 75 Kan. 557, 89 Pac. 925.) The fact that in exercising this authority in this instance the overseer was advised or directed by the township trustee or township board or by the county commissioners, or all of these officers, did not impair that authority. He performed some of the work in person or by laborers employed by him, and the landowner was employed to complete it. All work was done with the approval and consent of the overseer as as improvement of the road, and it was done in pursuance of public authority.

It is true that the private interests of a landowner were promoted by the improvement and that he was active in initiating and carrying it on. But the fact that such improvements are urged by and result in benefits to individuals does not impair the right of the constituted authorities, acting in good faith, to make them for the use and benefit of the public.

The evidence tends to prove that the defendant, with other owners of lands adjoining the road, was present at different times at consultations with the township officers, and at one time with the county commissioners, when this ditch was under consideration, and assisted in digging the ditch and in cleaning it out. In his testimony, however, he denied that he assisted in digging the ditch and stated that he always opposed it. As no special findings were requested it can not be known what the jury found from this evidence. But so far as it was conflicting it may be presumed from their general verdict that they found against the defendant upon any material fact necessary to uphold the verdict.

The dike, so called, thrown up by the plaintiff's father in constructing the ditch was really a part of it, serving to hold the water within it, promoting the flow in the artificial channel, and tending, as we may presume, to keep the channel open. The authority to make the drain involved the exercise of judgment in the manner of its construction. If the overseer gave the landowner no express directions or authority to make the dike, still it must have been done with his consent for it was a visible part of the work under his charge and oversight. No complaint was made of it by the defendant or any one else, so far as the evidence shows. The fact that it was less than a foot in height, of such slight stability that it was frequently washed away and broken during heavy rainfalls, and that in freshets the water rose above it, appear to show that it had but little effect beyond holding the water in the channel

Marts v. Freeman.

under ordinary conditions. In this view its construction is an incident of establishing the ditch, involving the exercise of judgment on the part of the officer having authority to make the improvement, who is vested with a broad discretion not to be interfered with by a court except in cases of fraud or bad faith. (*Shanks v. Pearson,* 66 Kan. 168, 71 Pac. 252; *Murphy v. Fairmount Township,* 89 Kan. 760, 133 Pac. 169.)

Having determined that the ditch was rightfully established by public authority it follows that its obstruction by the defendant was wrongful. The fact that a watercourse thus created is an artificial one affords no justification for obstructing it where it exists by lawful authority, although the obstruction only caused the water to flow where it did before the ditch was opened. The public had previously appropriated land of these parties for highway purposes. This appropriation included the right to make the highway fit for public travel, involving necessary drainage. It must be presumed that any damage consequent upon such improvement was paid for when the right of way was appropriated. Where land has been so taken for public use the owner can not recover further damages because of the injurious effects of repairs or improvements properly made in maintaining such use.

Among the cases illustrating this principle one arising in Nebraska is closely in point. The owner of land abutting upon a public road sought to restrain the road authorities from opening a culvert and otherwise changing the course of surface water so that it would flow upon his land, contrary to its previous course. The court said:

"It is now the settled law of the state that for all injuries which may arise on account of the proper construction or future operation of an improvement, an adjoining proprietor must be compensated in the original condemnation proceedings. . . . The owner

8—91 KAN.

of adjoining lands is entitled to compensation not only for such injuries as might result from the use of the land appropriated in its natural state, but for all which would result from a proper construction, improvement, and maintenance of the highway, taking into consideration such embankments, cuts; bridges, culverts, and ditches as shall be required or warranted for the purpose of a proper construction and maintenance. . . . It must be presumed that he received such compensation, or at least had an opportunity to receive it, when the highway was originally constructed. He is not entitled to any further condemnation proceedings. Much less is he entitled to a perpetual injunction to restrain such highway improvement." (*Churchill v. Beethe,* 48 Neb. 87, 90, 91, 92, 66 N. W. 992, 35 L. R. A. 442.)

The same rule is tersely given in section 55 of the second edition of Mills on Eminent Domain, where it is stated that the right of way appropriated for a road includes drains and gutters and that the original compensation paid is supposed to cover damages for such uses.

As the defendant had no right to relief by action to prevent or to recover damages caused by the opening or proper maintenance of this ditch, it follows that he could not lawfully obstruct it.

The only remaining question relates to the right of the plaintiff to recover private damages for the obstruction of this public ditch. It is a general rule that an individual who has suffered special injuries from a public wrong not common to the general public may recover damages therefor against the wrongdoer. (Addison on Torts, 8th ed., p. 10; 2 Cooley on Torts, 3d ed., p. 1292; 2 Farnham on Waters, 1197; 2 Elliott on Roads and Streets, 3d ed., § 850.)

"A public wrong, though the perpetrator of it may be subject to prosecution by the public, may also have the nature and consequences of a private wrong, and be actionable as such in behalf of a person who sus-

tains an injury differing in kind from that which the public at large suffers." (1 Sutherland on Damages, 3d ed., § 4.)

This principle, as applied to obstructions of highways, is stated in Thompson on Highways, 3d edition, page 345:

"Although it is a general rule that a private action can not be maintained for a public injury, as for a common nuisance, yet if an individual suffer a more special injury than any other from such nuisance, he may have a separate action therefor."

It is not deemed necessary to discuss the effect of the evidence tending to show acquiescence in opening and maintaining the ditch, in view of the conclusion that it was lawfully opened.

We do not decide whether the obstruction is within the provisions of section 17 of the road law relied upon by the plaintiff (Gen. Stat. 1909, § 7290), nor is it necessary to decide whether the instructions accurately stated in all respects the rules of law applicable to the controversy. It is sufficient to say that no error appears in the instructions or rulings of the district court of which the defendant can complain.

The judgment is affirmed.