No. 19,698.

A. J. FREEMAN, *Appellant*, v. C, A. SCHERER et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. INJUNCTION—*Drainage Ditch—Highway—Surface Water—Insufficient Evidence.* A ditch was dug in a highway by a landowner and the public officers to drain water from the highway as well as from the adjoining land, and an embankment or dike was made on the side of the ditch which served to prevent the water from passing upon the land on that side of the highway. After the enactment of chapter 175 of the Laws of 1911, which related to drainage, the ditch was deepened and the dike enlarged by the owners of the adjoining lands, the better to serve the ·purpose for which they were originally made. Another landowner brought an action to prevent the maintenance of the dike, alleging that it interfered with the flow of surface water from his land. It appeared that the maintenance of the ditch had not resulted in injury to his land since the dike was rebuilt and that there was no reasonable probability that it would do so. *Held,* that· the mere apprehension or possibility of injury did not warrant the granting of an injunction, nor is a party entitled to that remedy unless he satisfactorily shows that the injury is likely to occur and that his remedy at law is inadequate.

2. SAME—*Equitable Considerations.* One who seeks equity must do equity, and if an applicant for an injunction has encouraged, invited or contributed to the injury and loss sought to be enjoined, or acted wrongfully and illegally in respect to it, he is not entitled to the relief.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed February 12, 1916. Affirmed.

*Thomas Dever*, of Junction City, for the appellant.

*G. W. Hurd, Arthur Hurd, Bruce C. Hurd*, and *C. E. Rugh*, all of Abilene, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: A. J. Freeman brought suit against the defendants asking for a mandatory injunction directing the defendants to remove a dike built by them in April, 1911, after chapter 175 of the Laws of 1911 took effect, which dike Freeman alleged was so placed as to interfere with the natural course of drainage down the valley from his land. The lands involved in the suit all lie between two streams—one on the

west called Crute Branch, and one on the east called Chapman creek—and on both sides of a road running east and west on the line between sections 1 and 12. Freeman's land consists of the southeast quarter of section 1 north of the road, and the east one-half of the northeast quarter of section 12 (containing 80 acres) south of the road; and Chapman creek meanders in a southerly direction down through his land and across the road where there is a bridge. Defendant Scherer's land is the west one-half of the northeast quarter of section 12 and lies just west of plaintiff's south 80 acres; while the land of Sarah E. Marts is the quarter section lying just west of the Scherer land. All of the land of the defendants lies south of the road. The land of the plaintiff which lies north of the road and on the west of Chapman creek slopes in a general southerly direction, and the natural course of surface water is down across the road and over the lands of the defendants. The road mentioned was established in 1893, and to carry off the water that accumulated on the road as well as on the adjoining land the public authorities and an adjoining owner of land made a ditch along the road which was designed to improve the road and to carry the water to Chapman creek. The dirt taken from this ditch was thrown mostly on the south side of the ditch and formed a sort of embankment. At a later time the ditch was enlarged and the dike raised to some extent. The dike is about one-half mile long and extends along the south edge of the road on the north line of the land of the defendants.

The answers of defendants Scherer and Theodore Marts alleged among other things that there had been a ditch along the roadside which had properly taken care of the drainage for many years, and until it was filled up in 1910 by Freeman, and that any damage he may have suffered to his land was due to this act. In response to this claim Freeman alleged that the ditch was unauthorized and that he had a right to close it. Marts alleged and insisted that the rights of Freeman with regard to this dike had been litigated and determined in a former suit, tried in 1912, and that the only injury sustained by him resulted from his fault. The case to which reference was made was between plaintiff and one of the defendants herein, and many of the facts and contentions in the present case were

under consideration in that one. (*Marts v. Freeman,* 91 Kan. 106, 136 Pac. 943.)

The trial herein was before the court without a jury, and there was evidence which tended to show that the road mentioned was established in 1893; that in wet periods the surface water flowed from the north upon the road as well as upon the lands of the defendants on the south side of the road. To prevent injury to the road, and also to the land south of it, the public authorities and landowners jointly dug a ditch on the south side of the road from a slough, which was near the center of the valley, eastward about a half a mile to Chapman creek. It also appeared that plaintiff had recognized that the ditch was for the purpose of drainage and to carry water not only from the road, but also from the lands north of the road, by digging lateral ditches from his land to the ditch, and he had further applied to the township officers to put in a tile or drain across the road to carry the water from his farm to the ditch. In 1910 the plaintiff filled up the ditch and thereby caused injury to the land of Marts for which the latter asked a recovery of damages. In that action plaintiff denied liability, and insisted that the ditch was not dug for the benefit of the public; that the embankment or dike south of the ditch unlawfully obstructed the natural flow of the water and that it had operated to injure him. He asked to enjoin Marts from maintaining the ditch and embankment. That action resulted in a judgment in favor of Marts for damages and the injunction for which Freeman had asked was denied. Upon an appeal the judgment of the district court was affirmed. (*Marts v. Freeman,* supra.) It was there held that the fact "that the improvements were urged by and resulted in benefits to a landowner did not impair the right of the constituted authorities, acting in good faith, to make it for the use and benefit of the public." (Syl. ¶ 3.) And it was further held that "The fact that a watercourse so created is an artificial one affords no justification for obstructing it where it exists by lawful authority, although the obstruction causes the water to flow where it did before the ditch was opened." (Syl. ¶ 4.)

It appears that in the spring of 1911 the ditch was deepened and the dike raised, and that this was done after the enactment of chapter 175 of the Laws of 1911, which authorizes the

owners of land in certain cases to construct drains.  It does not appear from the evidence, however, that the plaintiff has since that time suffered any injury from the maintenance of the dike and the ditch.

When the plaintiff made his opening statement the defendants moved for judgment in their favor on the pleadings and the opening statement, but the court reserved its rulings on these motions; and after the plaintiff had introduced his testimony, the court on the demurrer of defendants, as well as on the motion for judgment on the opening statement, rendered judgment in favor of the defendants.  The plaintiff insists that there was some evidence which tended to support the material allegations of his petition, and that under the rules applicable where the evidence is challenged by a demurrer the ruling of the court was erroneous.  This was an equity case triable without a jury, in which the issues of fact as well as of law were for the determination of the court.  It differs little from a case which is finally submitted to the court upon the testimony of the plaintiff alone.  However, taking the plaintiff's testimony, uncontradicted as it was, and drawing all the inferences in favor of plaintiff where the testimony was open to more than one inference, the court, we think, was justified in holding that the plaintiff could not recover.  A public highway existed upon which the ditch was made.  That ditch had been constructed under public supervision and had served as an artificial channel to carry the water to the creek.  It had been recognized and used by the plaintiff as a means of draining his adjoining lands, and the embankment or dike appears to have been an incident of the making of the ditch and really a part of it.

It is urged by plaintiff that as the ditch and dike were rebuilt after the act of 1911 relating to drainage was in force, the rebuilding of the same constituted a violation of the provisions of that act as much as if the ditch and dike had been orignally constructed at that time.  The act, among other things, prohibits the lower proprietor of land from constructing a dam or levee that will obstruct the flow of surface water onto his land to the damage of an upper proprietor.  The ditch in question, as we have seen, had been in use for a great many years and had become an established artificial channel that carried off the surface water.  The work done upon it in 1911 did not change

its course nor divert it from the purposes for which it was originally dug. It is true, the dike was enlarged and that more earth was used in making part of it than was taken from the ditch. It was done, however, with the manifest purpose of confining the water in the ditch and carrying it to Chapman creek. But it is contended that the ditch was not in fact open when the law of 1911 was enacted and therefore it should be treated as an original improvement. It appears that plaintiff filled up the ditch and purposely obstructed the flow of water, some time in 1910, not long before the enactment of the law of 1911. Although it was determined in *Marts v. Freeman*, 91 Kan. 106, 136 Pac. 943, that the plaintiff was not justified in closing the ditch, he admits that he did so, and hence he voluntarily took the risk of the injury that might result to him from holding back the water that might have flowed through the ditch to the creek. If the reconstructed ditch, however, is to be treated as a new construction within the meaning of the act of 1911, the court was nevertheless warranted in denying the injunction. While plaintiff's land was overflowed during the exceptional floods of 1903 and 1908, when all the lowlands in that region were under water, it appears that no injury or loss has been suffered by him since the reconstruction of the dike or the enactment of the law of 1911. The fact that the land was overflowed during the exceptional floods does not warrant the inference that such floods will become common nor require the issuance of an injunction. Experience has demonstrated that injury from floods is not likely to recur and that the provisions already made for drainage are ordinarily sufficient. Injunction is not used to prevent a prospective injury unless it appears that there is a reasonable probability of injury and that the law will not afford an adequate remedy. "Mere apprehension or a possibility of wrong and injury by a defendant is ordinarily not enough to warrant the granting of an injunction." (*Hurd v. Railway Co.*, 73 Kan. 83, syl. ¶ 3, 84 Pac. 553; 22 Cyc. 769.) In *Whitehair v. Brown*, 80 Kan. 297, 102 Pac. 783, an action was brought to obtain an injunction to prevent the building of a dam which it was alleged would obstruct the flow of waters, and the court said:

"To establish their right to an injunction it was necessary for the plaintiffs to satisfy the court that there were reasonable grounds to fear

Freeman v. Scherer.

the recurrence of the new injury with such frequency as seriously to affect the value of their lands, or that other considerations rendered their remedy at law inadequate." (p. 300.)

(See, also, *Haage v. Kansas City S. Ry. Co.*, 104 Fed. 391; 2 Farnham, Water & Water Rights, § 582*a*, and cases there cited.)

If damage should result to plaintiff from the maintenance of the dike it would appear that an action for damages would afford him an adequate remedy in which each of the parties would have an opportunity to have his rights determined by a jury. The ditch and dike appears to have served the purpose reasonably well until it was obstructed by the plaintiff himself. The only injury that can come to him from the maintenance of the dike is that it might hold the surface water upon his land. He practically invited this result when he filled up the ditch and prevented the flow of water into the creek. One who asks for an injunction is governed by the usual equitable rules, and one of them is that "He who seeks equity must do equity." If he has acted wrongfully and illegally in the matter he is hardly entitled to ask for equitable relief by injunction. He did act illegally and wrongfully when he closed the ditch and obstructed the passage of water through it. In a sense he invited and permitted the injury which he anticipates may result to him from the ditch and dike. "A party can not invite and encourage a wrong, and then ask a court of equity to protect him by an injunction from the consequences of that wrong." (*Stewart v. Comm'rs of Wyandotte Co.*, 45 Kan. 708, syl. ¶ 2, 26 Pac. 683; *Downs v. Comm'rs of Wyandotte Co.*, 48 Kan. 640, 29 Pac. 1077; 22 Cyc. 776.)

Some objections are made to the rulings of the court excluding testimony, but in view of the facts related in behalf of the plaintiff in the opening statement of the case and the testimony of the plaintiff himself, none of the objections appears to be material.

The judgment is affirmed.