No. 33,617

NED W. ENGLER, *Appellant,* v. R. G. ALDRIDGE, doing business as ALDRIDGE CONSTRUCTION COMPANY, *Appellee.*

(75 P. 2d 290)

Opinion filed January 29, 1938.

*C. Vincent Jones, W. M. Beall* and *Wayne W. Ryan,* all of Clay Center, for the appellant.

*Oscar E. Peterson,* of Clay Center, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiff brought his action to recover damages caused by alleged negligence of the defendant in the construction of a bridge and highway improvements. In response to rulings of the trial court, certain amendments were made to the petition, and

thereafter a demurrer to the petition as amended was sustained. Plaintiff appeals from that ruling.

Omitting much of the detailed allegations, it was alleged in the amended petition that the plaintiff was the owner of certain lands in Clay county, Kansas, bordering on the east bank of the Republican river and immediately south of U. S. highway No. 24 (formerly No. 40), and that in October, 1934, plaintiff contracted with the state highway commission to convey to the state of Kansas for highway purposes a tract of about six acres bordering the public highway for a consideration of $851.49. This contract specified the price to be paid for the lands to be deeded and for removing fence, and further:

"Any and all verbal agreements are merged in this written contract and it is understood and agreed that the consideration for said real estate above stated is in full payment for the purchase of said real property and all other damages arising from the transfer of said property and its use for the purposes set out."

The deed provided was duly executed and delivered. There were allegations with respect to the course of the river and the conditions of the surrounding country upstream from plaintiff's land, and that on plaintiff's land a strip about 180 feet wide next to the river was two to three feet higher than the lands to the east thereof, which strip was covered with underbrush and trees. It was also alleged that defendant Aldridge was a bridge contractor, and, under a contract with the state highway commission, erected a bridge upon a portion of the lands purchased from plaintiff, and in so doing carelessly, negligently and wrongfully removed the trees and underbrush from the bank of the river, and removed dirt in such manner as to lower the surface about four and one half feet; that plaintiff protested against removal of the trees and brush and the digging of the ditch; that defendant built a high fill or grade on the east side of the erected bridge for approaches to the highway, the fill being about six feet higher than it formerly was. It was also alleged that the plans and engineering under which the work was done were fundamentally defective in that it was unnecessary to cut the ditch or to remove the trees, and that efficient floodgates should have been installed to prevent water from coming through the ditch and damaging plaintiff's land; that floodgates were practicable; that the work as planned and done was so obviously and patently defective in engineering and workmanship an ordinarily prudent man could and should have foreseen that damage would result to plaintiff's

land. It was further alleged that in June, 1935, the river went out of its banks and flooded the surrounding lands; that during said time the waters collected and flowed through the ditch and depression caused by the wrongful removal of the trees, underbrush and bank, and on to plaintiff's land, causing the cutting of holes, and the deposit of sand, to plaintiff's damage in the sum of $4,725; that it also damaged his barn in the sum of $200, and deprived him of ingress and egress to a part of his farm, to his damage in the sum of $1,000, and that all of the damages were proximately caused by the wrongful construction of the fill constituting the bridge approach and by the removal of the trees, underbrush and dirt to form the ditch, which, coupled with the natural bottleneck caused by bluffs along the river, caused the damages which should have been foreseen.

Appellant's principal contention is that appellee, an independent contractor, is liable to him in damages by reason of appellee's executing plans and specifications of the state highway commission for highway improvement abutting appellant's lands, where the plans and specifications were so fundamentally defective and such obviously poor engineering that an ordinarily prudent man could have foreseen that the execution of such plans and specifications would cause unnecessary damage to appellant's lands; and that he cannot escape liability merely because he completed the work and turned it over to the state highway commission before the damage occurred.

Appellant concedes that the state highway commission is immune from suit under the circumstances and that he has no cause of action against it for building the bridge and approaches, but he argues that while a large number of courts give to independent contractors the same immunity as given the state, the rule is without sound reason to support it and the contractor should be held responsible for damages that result because the improvement was made under plans and specifications alleged to be obviously unsound as a matter of engineering practice, and that such unsoundness was known to the contractor when he performed the work.

A brief review of the statutes under which this improvement was made shows that the highway commission is authorized to enter into contracts incident to the construction of the state highway system (G. S. 1935, 68-407) after giving notice and receiving bids (G. S. 1935, 68-408) based upon plans and specifications previously prepared (G. S. 1935, 68-409), the contractor to give bond condi-

tioned in part that he "will faithfully perform such contract in every respect," and also that he will pay bills for supplies, materials and labor, etc. (G. S. 1935, 68-410). It would thus appear that a contractor having undertaken an improvement was obligated by his contract and bond to perform according to the plans and specifications furnished by the state highway commission, and that he could neither change the plans nor quit the work because he believed the improvement as projected was bad from an engineering standpoint. The statutory provisions would seem to put the contractor in the same position as the state highway commission.

In connection with his argument that the contractor is responsible for carrying out an obviously unsound engineering project, appellant directs our attention to *Shanks v. Pearson,* 66 Kan. 168, 71 Pac. 252, and *Murphy v. Fairmount Township,* 89 Kan. 760, 133 Pac. 169. The Shanks case was an injunction to enjoin the road overseer from digging a deep ditch along the highway in front of plaintiff's residence and farm, and it was there held that such officer, while acting within the scope of his authority, is vested with a very broad discretion with which the courts will not interfere except in case of fraud or where there is abuse of discretion. The real point in issue and decided was that the trial court erred in refusing testimony tending to show special injury, that the improvement was being made to subserve private and personal ends, and further tending to show bad faith. .In the Murphy case the plaintiff sought to recover damages occasioned by an insufficient culvert, and to enjoin its maintenance. In that case there is a review of many of our decisions touching the power and discretion of highway officials in making improvements and liability therefor, and it was said:

"This court has gone only to the extent of holding that counties and townships in instances like this are not required to respond in damages for injuries already caused; not that they may be permitted to continue a nuisance or that they may not be enjoined from so doing." (p. 765.)

It was concluded that action for damages did not lie, but that the maintenance of the insufficient culvert might constitute it a nuisance which should be abated.

Instructive as both of the above decisions are, it must be noted that they hold only that relief may be afforded by injunction in certain cases, not that the municipal authorities are liable in damages, and in neither of them was the question of liability of an independent contractor involved.

It will be observed that in plaintiff's petition it is not alleged that defendant performed the work in a negligent manner, but on the contrary that he performed the work under plans and specifications so obviously bad and defective from an engineering standpoint that he knew or should have known that plaintiff would be damaged by the completion thereof. He further alleged that he protested against the work being done. Just why he did not then proceed by injunction to prevent a condition which was as obvious to him as to the contractor is not made to appear.

It has been repeatedly held that a contractor employed by a municipality to make a public improvement as authorized by statute and who performs the work with proper care and skill is not liable for damages resulting to abutting property owners. (43 C. J. 1111, 44 C. J. 451, and see the annotation on right of contractor with public body to immunity which latter enjoys from liability for damages, 69 A. L. R. 489.)

Although not clearly shown by the allegations of the petition, from the argument it seems conceded that the work of the defendant was completed and had been accepted by the state highway commission before the flood of 1935 occurred, the waters of which caused the damage of which appellant complains. In 14 R. C. L. 107 it is said:

"The general rule is well established that an independent contractor is not liable for injuries to a third person, occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury results from the contractor's failure to properly carry out his contract."

(Also, see annotation on right and duty of highway contractor as to barricading or obstructing street, where the above rule is also stated and cases cited, 7 A. L. R. 1203,.1211, supplemented in 104 A. L. R. 955, 966.) If it is correct that the work had been accepted by the state highway commission, then it would appear defendant was relieved from liability thereafter.

Apparently in the trial court appellee placed considerable reliance upon the fact that when appellant sold land to the state highway commission for the purposes of the improvement he conveyed without reservation, and it must be presumed that any consequent damages were paid for when the lands were purchased. (*Marts v. Freeman*, 91 Kan. 106, 136 Pac. 943; *Devore v. State Highway Comm.*, 143 Kan. 470, 54 P. 2d 971.) Appellant contends the cases do not support appellee's position. We do not deem it necessary to

discuss the appellant's contention. The contract for purchase contained the clause hereinbefore quoted. It goes beyond any presumption and is an express statement that the consideration received covered not only land taken but damages arising from its use for highway purposes.

We have examined other authorities cited by appellant covering his general contention that the state's immunity from suit should not be extended to the contractor, who knew that the plans, if carried out, would produce a dangerous situation, and conclude they have little, if any, bearing on the matter as disclosed by the pleading under consideration.

We conclude that all the petition discloses is that under his contract with the state highway commission the appellee performed according to the plans and specifications, which were a part thereof, to make certain highway improvements, all without neglect of any duty appellee owed appellant, and that the trial court properly sustained appellee's demurrer to appellant's petition seeking to recover subsequent damages.

The judgment of the trial court is affirmed.