No. 28,255.

In re Claim of PHILLIP SICKS, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ALLEN, *Appellant*.

(270 Pac. 607.)

644

Opinion filed
October 6, 1928.

*Kenneth H. Foust,* county attorney, for the appellant; *G. R. Gard,* of Iola, of counsel.

*Charles H. Apt* and *Frederick G. Apt,* both of Iola, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This controversy originated in a proceeding to condemn land belonging to Phillip Sicks, deemed necessary to the erection of a viaduct where a highway crossed a railroad, and to recover the damages sustained. At the conclusion of the proceedings, including a trial in the district court as to damages sustained, an award of $2,000 was made to Sicks, from which the county commissioners appeal.

Sicks, it appears, owned a farm alongside of a state highway which passed in front of Sicks' home near which was a grade railroad crossing. It was proposed to improve the highway and federal aid had been allowed for the project on condition that the grade crossing should be eliminated. To accomplish this it was deemed necessary to build an overhead crossing called a viaduct. The county commissioners made an order approving the plan, and finding that more land was necessary than was included in the highway the commissioners proceeded to condemn land owned by Sicks. A view was made by the commissioners after notice had been given to landowners. The plaintiff was present when the view and a partial assessment of damages were considered. The commissioners determined that Sicks was entitled to an award of $184.20 for two small wedge-shaped tracts of land taken, and the further sum of $768 for dirt taken to be used in building the viaduct. The allowance on the dirt item was on the basis that 12,800 yards of earth would be taken, and the value was fixed at six cents per yard. When these allowances were made the commissioners modified the original claim filed by Sicks by segregating and interlining in it the awards made on the two items, and entering a total of $952.20. A warrant was issued in favor of Sicks for that amount. When Sicks learned of the award made he protested and refused to accept the warrant which had been issued to him. After the original claim was filed Sicks presented a claim for $15 for the loss of a fence, and afterwards filed a further claim of $6,000 for damages to the land not taken. When the award was made for the two items some negotia-

tions were had between the commissioners and Sicks as to additional damages to the land adjoining the viaduct and not condemned or taken. An agreement was then made that the allowances on the two items of damage for which a warrant was issued might be taken down by Sicks and another owner without prejudice to plaintiff's claim for additional damages to land not taken. The commissioners caused to be entered on the journal the following order:

"It appearing that C. C. McCarty and P. H. Sicks, both of whom were awarded certain sums as the value of the lands taken and damages to the adjoining land, desire to accept said sums so awarded and to withdraw the same with the understanding that their receiving the money would not prejudice their rights to claim additional damages to the lands adjoining the said tracts so taken and from which dirt was to be removed."

In accordance with the agreement the check for the partial allowances for the two items was accepted by Sicks, and the further allowance for damages for the part of the farm not taken was left for future consideration. Sicks was informed by the commissioners that the taking of the award made would be no bar to a claim for other damages. The claim for the additional damages was laid over by the commissioners from time to time from December 2, 1924, until August 4, 1925, and several other continuances were ordered by the board on the ground that the viaduct had not been completed, apparently on the theory that the extent of the damages could not be ascertained until the viaduct had been built. When the matter of further damages was taken up by the commissioners an additional allowance of $300 was made, which was not accepted by Sicks, and the controversy was then transferred to the district court where it was tried with the result already stated.

The commissioners contend that the failure of Sicks to take an appeal from the first award waived the right to any further claim for damages, and that the award stood as a final determination of the subject of damages sustained by the condemnation. We cannot agree with this contention. Only a partial award was made by the commissioners. Only two items of the damages sustained were considered and determined and consideration of other damages was postponed. The evidence sufficiently shows that the duty which devolved upon the commissioners was not complete when the partial award was made. The proceeding was continued for a future hearing and decision. The commissioners recognized that the proceeding was not finished when it later increased the allowances of damages

to the amount of $300. They also recognized that further consideration would be given to plaintiff's claim for damages when they agreed with him that the acceptance of the amount allowed for two items of his claim would not be a bar to his right to claim additional damages to the lands adjoining the tracts taken. Plaintiff was claiming damages beyond the allowances made; that is, to the remaining part of his farm. The viaduct, which, it appears, was about twenty-five feet high, erected in front of his home, not only cut off his view but it obstructed ingress and egress to and from his premises. It affected drainage so that water was accumulated and held on his land near his residence. Plaintiff testified that, "it is just a regular lake of water up and down there on the east side in front of my house." There was proof as to the destruction of two wells of water, and the problem of finding other good water in other parts of his farm was doubtful, it being shown that it is difficult to find good water in that section. Some other injuries which it was claimed lessened the value .of the unappropriated part of his farm were shown. These were the elements of damages for which claims were made and for the consideration of which the hearing by the commissioners was postponed to a later date. In such a proceeding it is not essential that the commissioners should complete their work at a single sitting or at any fixed time. It is competent for such tribunals to adjourn their meetings from time to time as the necessities of the case may require. (*L., N. & S. Rly. Co. v. Meyer,* 50 Kan. 25, 31 Pac. 700.) No reason is seen why they may not legally examine several items of damages claimed and determine the award to be made upon those upon which satisfactory proof is produced and then make a partial report, leaving other items for further examination upon additional view and evidence. Ordinarily the filing of a final report by the commissioners ends their jurisdiction, but in cases where final report is made and there are omissions therein and matters left undecided it would still be their duty to complete their examination and report, a duty which, if necessary, may be compelled. (*State, ex rel., v. Railway Co.,* 105 Kan. 548, 185 Pac. 286.) Here, however, the commissioners had not completed their work or made a final report. The matter of damages to the land not taken was continued for further examination and determination. The partial report, therefore, did not bar a full and complete inquiry and did not end their authority to finish the inquiry and make an assessment of the damages actually sustained.

There is a contention that the terms of the entry made by the commissioners in their journal to the effect that an award had been made for damages to adjoining land operated to preclude the plaintiff from thereafter claiming such damages. This *ex parte* order entered without the knowledge of the defendant is not binding upon him.

In that connection complaint is made of an instruction of the court with respect to this order, in which the court stated:

"You are further instructed that pursuant to said claim and the action of the defendant thereon, an *ex parte* order was drawn by defendant, through its counsel, making allowance therefor, which said order has been introduced in evidence and read to you, and which said order includes the phrase 'and adjoining lands.' In this connection you are instructed that the phrase 'and adjoining lands' was not included within the claim filed by plaintiff and is not binding upon him because he had no part in the drawing of the order and had no knowledge thereof. What is meant in these instructions by the term '*ex parte*' is that it is one-sided. That is to say, the party on the other side has no part in the drawing of the order and no knowledge of the same, and as a matter of law is not bound thereby unless the same was included in his claim filed."

As interpreted by the commissioners, the entry is inconsistent in that under one phrase there is an implication that a sum had been awarded as damages to the land not taken, while in a later part of it it carries the idea that plaintiff had a right to claim damages sustained by the land not taken. Evidently the phrase was inserted to cover the allowance of $768 for the dirt to be taken from the land not condemned and was not intended to cover the general damages to the remainder of plaintiff's farm.

There is criticism of some other of the instructions and also as to comments of the court in the course of the trial, but we discover nothing material in them. The evidence is sufficient to sustain the finding of the jury as to the damages sustained and no error being found in the record, the judgment is affirmed.