No. 32,664

JOHN DE VORE and BEATRICE DE VORE, *Appellees* and *Cross-appellants*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(54 P. 2d 971)

Opinion filed March 7, 1936.

*Wint Smith,* assistant attorney general, *Henry E. Martz,* assistant attorney for state highway commission, *Albert Faulconer, Kirke W. Dale* and *C. L. Swarts,* all of Arkansas City, for the appellant.

*S. C. Bloss* and *Harry O. Janicke,* both of Winfield, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was a condemnation action commenced by the state highway commission to condemn other and additional land after having procured a deed from the landowner to that part of his land upon which the actual roadway and its embankments were located. One of the tracts condemned is an irregularly shaped tract, or rather, several small narrow tracts and one large tract on the east bank of Grouse creek, all in the northwest quarter of section 23, and amounting to 5.37 acres; and the other was a tract immediately north of the highway 1,050 feet east and west and 200 feet wide, located in the northeast quarter of section 22. It contained 4.83 acres and is frequently referred to as a borrow pit, these two tracts making a total of 10.2 acres.

The landowner continued to own 552 acres in the tract from which the right of way was conveyed and this 10.2 acres were condemned. It was in a body two miles long and all but one fourth of it one half a mile wide north and south. It was described as being about three fourths pasture land. Silver creek ran in a southerly direction through the northeast quarter of section 22 near the east side of that quarter section. Grouse creek ran in a southerly direction through the northwest quarter of section 23 near the east side of that quarter section. There were deep draws where these creeks crossed the half-section line or south edge of this tract of land. The old road had been on this half-section line until it approached these deep draws. It then veered south and crossed these creeks at easier crossings, then returned northerly to the same half-section line. When this road became state highway No. 166 the highway commission decided to straighten it and have it continue across these draws on the half-section line, and for that purpose purchased from John De Vore and wife the necessary right of way for that purpose. Later, and for use in the construction of this road, the highway needed the additional land and commenced this action to condemn this additional 10.2 acres, claiming it was needed mainly for borrow pits or from which it could get extra dirt needed for the fills. The appraisers appointed by the court returned an appraisement of the 5.37-acre tract at $200 and the 4.83-acre tract at $300, or a total of $500. From this appraisement the landowners appealed, and the highway commission deposited this sum with the county treasurer.

On the trial in the district court before a jury much of the evidence of the landowners went to show the probability of damages to the remaining 552 acres from flood waters by reason of the method of the construction of the highway, embankments, fills and bridges. Such evidence was introduced over the objections of the highway commission until the plaintiffs rested their case, although the trial court had frequently expressed doubt as to the correctness of the rulings thereon. At the close of plaintiffs' testimony the court excluded from the consideration of the jury evidence as to damages to the remaining land by reason of floods and prospective floods, informing the jury that it had nothing to do with any damage that comes from the building of the road, nor from the grade, nor from the sufficiency of the bridges.

After the introduction of testimony by the highway commission and the giving of instructions the jury brought in a verdict for the

landowners for $6,431, and answers to special questions, showing that $1,431 was for the 10.2 acres of land taken and $5,000 was for the depreciation in value of the 552 acres by reason of the land taken. On the hearing of the motions of both parties for a new trial the court reduced the verdict from $6,431 to $5,000, with interest thereon, and overruled both motions. The highway commission appealed from the judgment rendered thereon, and the landowners filed a cross-appeal.

The highway commission, the appellant, urges its grounds for error under the following questions involved:

"1. Does the record contain any substantial, competent evidence to support the verdict and judgment, or was the verdict rendered upon conjecture and speculation, or under the influence of passion and prejudice?

"2. Did the admission of evidence of damages, not flowing out of the condemnation, and not directly resulting therefrom, substantially prejudice the rights of this defendant?

"3. Is the defendant required to pay interest upon a judgment in a condemnation appeal?"

The appellees urge the negative of each and all of the questions, and under their cross-appeal propose the following question:

"Does not the act of the trial court in ruling out all evidence concerning flood damage, and taking such evidence from the jury, require a new trial as to the amount of damages arising from waters and flood water?"

We will first consider the cross-appeal where the appellees maintain that the highway is to be regarded as one entire thing and the landowner is entitled to recover all damages directly resulting to the remainder of his land from the location and construction of the road, whether the roadbed be actually placed on that portion of the right of way taken from his land or not, citing *C. K. & N. Rly. Co. v. Van Cleave,* 52 Kan. 665, 33 Pac. 472. This was a case where there was only one effort to acquire the land for the construction of a railroad either by condemnation or by deed, and because the railroad company actually placed the railroad entirely on the adjoining land to the south and used the plaintiff's land only for embankments and borrow pits, it was held that the owner was entitled to recover any damage suffered as depreciation in the value of the remaining land by reason of the construction of the railroad crossing and improper construction of the road. In this Kansas case *Blesch v. Chicago & Northwestern Ry. Co.,* 48 Wis. 168, 2 N. W. 113, is cited with approval, and it was where only six inches of plaintiff's land was needed for embankment, and the court held it was all one

right of way and the owner was entitled to recover all loss which he had sustained by reason of the road being built and operated on or over part of his land. This instance, too, was the first and only attempt to procure the land for railroad purposes.

The case of *Smith v. Wyandotte County*, 113 Kan. 244, 214 Pac. 104, cited by appellees, is more nearly like the case at bar in that the land on which the highway was located had already been appropriated and the highway constructed and in use. The condemnation proceedings were to condemn land for the widening and improvement of the highway, and the court there held:

"Where a strip of land is taken from an entire tract for the widening and improving of a highway, the owner is entitled to compensation to the extent of the value of the land taken and for injury to and depreciation of the remainder of the tract resulting from the appropriation; and in determining the damages to which he is entitled, consideration may be given to the character of the improvement and its effect upon the part of the tract not taken, including interference with access to the tract and the use to which it is devoted or reasonably adapted." (Syl.)

All the damages to the land not taken is therein definitely limited to that caused by the improvement, not to the construction of the road originally. The only difference between these cases is that in the Smith case the highway was constructed and in use before the attempt to widen and improve it. In the case at bar before the highway was constructed, but after the deed for the right of way had been secured, borrow pits and additional land were found to be necessary.

Suppose instead of getting a deed from the landowners for the right of way, it had been condemned, would this subsequent condemnation proceeding for additional land have properly included all the damage to the remaining land on account of floods or other inconveniences caused by the building of the highway, which had been covered in the allowance of damage in the former condemnation action? We think not. The deed grants all the rights and privileges that could be acquired by a condemnation action, and its consideration covers not only the value of the land taken, but also the damage to the land not taken. This is and has been the general rule, as is stated in 2 Lewis on Eminent Domain (3d ed.), § 474:

"The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation. The conveyance will be held to be a release of all damages which would be presumed to be included in the award of damages if the property had been condemned."

This same rule is stated in the following cases: *Norris v. Vt. Central R. Co.*, 28 Vt. 99; *C. R. I. & P. Ry. Co. v. Smith*, 111 Ill. 363; *Kotz v. I. C. R. R. Co.*, 188 Ill. 578, 59 N. E. 240; and *Tacoma Mill Co. v. Northern Pac. R. Co.*, 89 Wash. 187, 154 Pac. 173.

Attention is called to the testimony of one of the owners that when he gave the deed for the right of way he was told there would be no fill. But it is stated there is no reservation in the deed.

We think the trial court properly instructed the jury by limiting the damage to the land not taken to "such damage as you find from the evidence such appropriation of the 10.2 acres damaged the reasonable fair market value of the remaining portion of appellant's farm," and there was no error in the withdrawal from the consideration of the jury of the evidence of flood and other damages caused to the remainder of the land by the construction of the highway, that damage, if any, being properly included in the consideration of the conveyance.

The first and second questions involved, as stated by the appellant, deal mostly with passion and prejudice of the jury as evidenced by its verdict, and the verdict apparently was supported only by the conjectural and speculative character of evidence admitted and later withdrawn from the consideration of the jury. The trial court was undoubtedly impressed along this line when it reduced the verdict nearly one fourth. The amount of the damage found by the jury to the remaining land was $5,000, which was approximately one third as much as the largest estimate given by any of the witnesses for all the damages for every reason including construction of the highway and floods, which was later withdrawn from consideration of the jury. In fact, only one witness is mentioned as having given an estimate of the damages caused to the remainder of the land by the taking of the 10.2 acres, and appellees construe one of his answers on cross-examination as placing such specific damages at $7,000. This witness was being cross-examined as to the detailed items making up the difference in value of the land remaining which he said was $25,000 before and $8,000 or $9,000 after, and after detailing to some extent he was asked the following question, and gave the following answer:

"Q. How do you make out this other $7,000 damage—tell the jury that? A. Depreciation in the valuation of the land—what it would be worth now and what it was worth."

The force of this theory is seriously affected when we consider an

earlier question put to him in the same cross-examination and his answer thereto, as follows:

"Q. Now, in coming to that conclusion, how much, if any, did you allow for the possibility of damage by reason of the water that is caused by the fill in the highway? A. That is practically all of it—it has caused it all."

Without any other estimate of amount of damages caused by the taking of these 10.2 acres than the last, which is convincing along that line, we cannot help believing the jury was unable to dismiss from their consideration the impression made by large figures of the flood testimony, although the court instructed that it be not considered. Eliminating the $7,000 statement, which we feel was so modified by the former answer of the same witness as to make that necessary, the jury was without any estimate of damages on the only question of damages submitted. We are aware that evidence improperly admitted and later withdrawn cannot, in the absence of some affirmative showing, be held to have worked material prejudice. (Cox v. Chase, 99 Kan. 740, 163 Pac. 184, and Burke v. Missouri-K.-T. Rld. Co., 132 Kan. 625, 635, 296 Pac. 380; Whittaker v. Voorhees, Sheriff, 38 Kan. 71, 15 Pac. 874; and K. P. & W. Rld. Co. v. Quinn, 45 Kan. 477, 25 Pac. 1068.) But there is an affirmative showing here of prejudice when no evidence as to amount of damages was left in the case, but the jury brings in a verdict and answers to special questions for an amount that would have been reasonable if the flood evidence had not been withdrawn.

Perhaps some witnesses may be permitted to describe injuries or damage without naming amounts, but others usually supply that omission. The jury in this case went out under instructions to see the premises, but that would not be sufficient without substantial evidence on the matter submitted to it for determination.

What we have said here does not by any means infer that there are no damages or that there was no evidence of damage to the remaining land. One witness spoke of the water collecting in the borrow pit and the little ditch that drained it. Another spoke of the borrow pit being an eyesore. The engineer said the borrow pit was entirely outside the right-of-way line. Another witness said the owner was required to change some fences by reason of the borrow pit. The borrow pit land is too low for a truck garden. Another said the borrow pit is not worth anything now. Another said after a shower the rain would run into the borrow pit, the drain sometimes fills up and the water becomes stagnant.

The evidence makes a proper basis for some damages just as it was submitted by the trial court, but we are compelled to hold that the verdict and answers to some of the questions are not supported by the evidence and were necessarily the result of passion and prejudice on the part of the jury, and the verdict must therefore be set aside. There is sufficient evidence to support the answers to the special questions as to the value of the 10.2 acres of land taken being $1,431. This part of the finding and judgment will be sustained, but we hold a new trial should have been granted appellant as to the question of damages for the taking of the 10.2 acres.

Appellant complains of the allowance of interest on the judgment in condemnation cases, but we think this assignment of error is not well taken under the decision in the case of *Fleming v. Ellsworth County Comm'rs,* 119 Kan. 598, 240 Pac. 591, in the opinion of which on page 602 the case of *Salthouse v. McPherson County,* 115 Kan. 668, 224 Pac. 70, is distinguished. (See, also, *Miltimore v. City of Augusta,* 140 Kan. 520, 38 P. 2d 675.)

The judgment of the district court is affirmed except as to the question of damages, and the cause is remanded with instructions to render judgment against defendants for the value of the 10.2 acres of land taken in the sum of $1,431, as found by the jury and approved by the trial court, with interest, and to sustain the motion of the appellant for a new trial, limiting the trial to the question of damages to the remaining land by reason of the taking of the 10.2 acres. It is so ordered.