No. 33,713

John De Vore and Beatrice De Vore, *Appellees*, v. The State Highway Commission of the State of Kansas, *Appellant*.

(79 P. 2d 852)

Opinion filed June 11, 1938.

*Lester M. Goodell,* assistant attorney general, *Robert Osborn,* of Stockton, *Harwood Shoemaker, C. C. Casey,* both of Topeka, *Woodrow B. Morris,* of Oxford, *Joseph W. Menzie,* of Manhattan, and *Earl M. Knight,* of Arkansas City, for the appellant.

*W. L. Cunningham, D. Arthur Walker* and *Wm. E. Cunningham,* all of Arkansas City, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action for the value of land taken and damages to land remaining, arising out of the condemnation of certain lands for highway purposes, the land taken by condemnation proceedings being in addition to that originally purchased and conveyed when it was found more land was necessary for the construction and completion of the road.

The case has been twice tried to a jury. The judgment first rendered was reversed on appeal to this court because the verdict was necessarily the result of passion and prejudice on the part of the jury, as decided and reported in 143 Kan. 470, 54 P. 2d 971. In that trial evidence was introduced over objection as to flood and other damage to the remainder of the land by reason of the construction of the highway. At the close of the introduction of the evidence of the plaintiffs the trial court struck out all such evidence and on the motion for new trial reduced the verdict by $1,431, and rendered judgment for the balance. On appeal the case was reversed and remanded for a new trial.

A new trial has been had which resulted in a verdict and judgment for plaintiffs for the sum of $4,750, of which amount $1,205.75, as shown by answers given by the jury to special questions, was for land taken, leaving a balance of $3,544.25 as damage to the land not taken. The appeal of the highway commission is from this judgment, claiming that the substantial rights of the highway commission were prejudiced by the admission of evidence of damages not flowing out of the condemnation or directly resulting therefrom. The appellant has in mind particularly the evidence of damage on account of obstructing ingress and egress of the farm.

On this last trial there was no evidence introduced as to damages to the remaining land by reason of floods and none by reason of the construction of the highway unless it was, as appellant contends, as to the matter of ingress and egress of the remaining land.

Appellees contend that this evidence as to ingress and egress was limited to the damage done the remaining land by the taking of the

additional land being now and here condemned and not by reason of the original land conveyed for a highway or the construction of the highway. This damage to ingress and egress and the existence and condition of the borrow pits are the only two elements of damages here involved.

The petition described the land taken as two tracts, but the evidence shows that the east tract, which is on both sides of Grouse creek, was subdivided into four different tracts, three of them adjoining each other and the fourth slightly separated from the three, but all of them immediately north of the originally conveyed right of way of the highway in question and containing a total acreage of 5.37. One of these four tracts contained 4.44 acres, and on the southern end of this large tract was a borrow pit where about four feet of dirt was taken off about one and a half acres. The other tract described in the petition was east of Silver creek and adjoined the right of way on the north. It was 1,050 feet long, east and west, and 200 feet wide, and contained 4.83 acres. It was used only as a borrow pit and was said to be from four to ten feet deep. The total amount of land taken by this condemnation was 10.2 acres. The farm from which this additional land was taken by the highway commission was one and a half miles east and west and a half mile north and south, all immediately north and adjacent to the highway. The amount of land remaining in the farm after the original conveyance and this condemnation was 552 acres.

Appellant cites *Marts v. Freeman*, 91 Kan. 106, 136 Pac. 943, which holds that damages to the landowner consequent upon an improvement properly made to a highway was paid for when the right of way was appropriated. This decision is in line with the holding of this court upon the former appeal with reference to damage by reason of floods or construction of the highway, and we have no hesitancy in saying that if this damage as to obstruction of ingress and egress was caused by the original construction of the highway nothing could be recovered therefor. There are some border-line cases cited in this connection where there was a change in the construction by the taking of additional land to widen the street, but the landowners base their entire claim in this case for damages on account of obstructed ingress and egress upon the condemning and taking of additional land and not upon the construction or improvement of the highway.

Special questions 6 and 7, answered by the jury, are as follows:

"6. Do you find the ingress or egress to or from appellants' land has been damaged by reason of the condemnation? A. Yes.

"7. If you answer question No. 6 in the affirmative, state the location of such damage. A. Entrance to feed lot and eighteen (18) acre tract east of Silver creek between Silver creek and bluff. Entrance to 4.44-acre tract east of Grouse creek."

The evidence shows that east of Silver creek there is a feed lot of about eighteen acres, and east of the feed lot is a bluff about thirty feet high. The driveway into this feed lot from the house west of Silver creek was on the highway across Silver creek, then to the north and then east along the northern boundary of the right of way. It was a sort of cattle trail about twelve feet wide, and a good, safe driveway past the very large trees and the south end of this high bluff, but when the highway commission condemned this narrow strip north of its original right of way there was not enough room left to drive between the condemned land and the bluff and the large trees on the north. So the entrance to the feed lot was cut off or destroyed by the condemnation of this narrow strip. Instead of the use of this driveway between the highway and the bluff, which was closed by the condemnation of this narrow strip, the commission constructed a private driveway for plaintiffs from the elevated highway down to the feed lot at a grade of about twenty-five percent, which was unfit for use of loaded wagons or the transporting of farm machinery. The question is, Was the obstructing of this private cattle trail or driveway to and from the feed lot, by reason of condemning it, a damage to the land not taken, especially when the substitute attempted to be made by the appellant was unfit for use?

The evidence shows a similar situation as to the three pieces of land condemned near Grouse creek and just north of the original right of way of the highway. The border private driveway had been along the northern line of the highway, and one and a half acres of the largest tract taken was made a borrow pit, which obstructed ingress and egress of land not taken in that vicinity. A possible, but dangerous, route is indicated as being under the bridge on a narrow strip of land at the edge of the creek, but like the new driveway near Silver creek, it was not fit or practicable for loads or machinery.

The evidence is ample as to both private driveways that they were obstructed by the appropriation of land by condemnation, and that the ingress and egress were not disturbed by the original con-

struction of the highway. If the ingress and egress were disturbed by the original construction of the highway, there can be no recovery .in this case, so we must disregard any and all inconveniences caused by the location or original construction of the highway, because that loss, if any, was included in the original purchase and conveyance, and the damages here recoverable must be limited to those alone which were caused by the taking of the land now being condemned. As stated before, appellant cites decisions from this and other jurisdictions, which can be termed border-line cases, where some of the damage or inconvenience can be traced to both takings and constructions, but here the evidence of obstructing the ingress and egress does not go back of the recent taking by condemnation. So those border-line authorities are not applicable.

In the case of *Sicks v. Allen County Comm'rs*, 126 Kan. 643, 270 Pac. 607, the highway was improved by making it an overhead crossing of a railroad instead of a grade crossing, thereby obstructing the ingress and egress to and from the landowner's premises for which he was allowed damages to the land not taken. Several railroad cases are cited where the same rule is observed as to the improvements or extensions obstructing the landowner's ingress or egress of his land.

In the case of *Smith v. Wyandotte County*, 113 Kan. 244, 214 Pac. 104, it was held:

"Where a strip of land is taken from an entire tract for the widening and improving of a highway, the owner is entitled to compensation to the extent of the value of the land taken and for injury to and depreciation of the remainder of the tract resulting from the appropriation; and in determining the damages to which he is entitled, consideration may be given to the character of the improvement and its effect upon the part of the tract not taken, including interference with access to the tract and the use to which it is devoted or reasonably adapted." (Syl.)

In addition to the allowance of damage to the land not taken, which was caused by the obstructing of the ingress and egress of the land, was that claimed by the landowners on account of the alleged obnoxious and offensive character of the two borrow pits condemned. Both of them were adjacent to the highway and the larger one was within 138 feet of the house on the farm. The evidence shows the one near the house did not drain readily and water stood in it much of the time. Weeds grew in it. The stagnant water gave off an offensive odor. Frogs and mosquitoes abounded there. The soil was all removed so it could not be farmed. Its location being so close to the

highway and residence seriously affected the value of the farm. The other borrow pit near Grouse creek was not so large, deep nor offensive, but in addition to obstructing ingress and egress, it was said to be unfit for ordinary farming, and otherwise objectionable. The jury was properly instructed as to the use of the borrow pits not being exclusively in the highway commission, but could be used by the landowner when not being used by the commission.

We find no error in the admission of evidence to establish the value of the land taken or to prove the damages to or depreciation in the value of the land not taken, caused by the condemnation of additional land for highway purposes which obstructed ingress and egress to and from different parts of the remaining land, and the depreciation caused by the unsightly appearance and obnoxious character of the borrow pits on said land so condemned.

The judgment is affirmed.