### STATE et al. v. LINDLEY et al.
### No. 12783.

Court of Civil Appeals of Texas. Dallas.
Nov. 4, 1939.

Rehearing Denied Dec. 2, 1939.

Gerald C. Mann, Atty. Gen., and Bruce W. Bryant, A. S. Rollins, and Geo. W. Barcus, Asst. Attys. Gen., for appellants.

Webb & Webb, of Sherman, for appellees.

BOND, Chief Justice.

Appellees, J. W. Lindley and wife, brought this suit against The State of Texas and the State Highway Department of the State of Texas, pursuant to a Concurrent Resolution of the Legislature, for damages claimed to have been sustained by reason of the construction of a ditch by the Department, so as to cause water, on occasions of heavy rains, to flood their lands and buildings located adjacent to a state highway. The suit is grounded on alleged negligence of appellants, acting separately and concurrently, which directly and proximately brought about and produced the items of damage claimed to have been sustained. Appellees were designated as plaintiffs in the court below, and appellants as defendants; we will so consider them in this opinion.

The cause was submitted to a jury on special issues and, on findings that a permanent "structural change" had been made in the ditch and watercourse by defendants, and that such "structural change" caused plaintiffs to suffer damage to their real estate and personal property, the trial court accordingly entered judgment in favor of plaintiffs.

The primary contention in this appeal and, we think, the ultimate and all-important question is, that plaintiffs are estopped by their deed conveying an easement over their land to the State of Texas, for the establishment and construction of the highway in question. In 1928, Lindley and wife were the owners of a small tract of land in Grayson County, located about one-half mile north of the City of Sherman. The State Highway Department, in conjunction with Grayson County, caused to be prepared by the county engineer an official plat, diagram and blue print of State Highway No. 6, designated to go through the Lindley property. On February 17, 1928, Lindley and wife executed and delivered to the State of Texas and County of Grayson, of said State, an easement right-of-way to establish and construct the public highway on a strip of land 100 feet in width across their land. The deed recites—material here: " * * * the strip of land 100 feet in width across the said tract of land be used to complete and carry out the general public road program of the County and State and to properly construct said Highway No. 6. Therefore, the undersigned, the owners of said above mentioned one acre in the said original survey granted to J. B. McAnair, and located as aforesaid in Grayson County, Texas, about ½ mile North from the town or city of Sherman, hereby for and in consideration of the advantages to said land and the enhancement of its value by reason of the construction of said Highway No. 6, across same and $250.00 to us in hand paid, the receipt whereof is hereby acknowledged, have this day granted, bargained and sold, and do by these presents grant, bargain and sell to the

State of Texas, and the County of Grayson, of said State, the easement and right to construct said public highway on the said certain strip of land 100 feet in width across said one acre tract and being the strip of land fully described in and as a part of the official plat, diagram and blue print of said State Highway No. 6 as prepared and compiled by J. G. Rollins, County Engineer of Grayson County, Texas, and here now exhibited to the undersigned and fully understood by the undersigned as a part of State Highway No. 6 and to be used for public road purposes. And it is further understood and agreed that the undersigned hereby waive all their claims, rights, and interest in and to any claim for damages and compensation by reason of the establishing and construction of the said Highway No. 6 over and across the said tract of one acre of land, as confined within said 100 foot strip of land."

▮ It is admitted in plaintiffs' pleadings and evidence that the above deed, a copy of which was attached to the defendants' answer, was executed by the grantors for the considerations stated therein, and that the highway followed the course designated across plaintiffs' land; and was being used to complete and carry out the general road program of the State and County. The purport of the deed is nowise challenged, and it is obvious from the record and the findings of the jury that the damages which plaintiffs claim to have sustained, are the result of the establishment and construction of the highway by the County and State. Clearly, if the State and County had not established and constructed the highway, plaintiffs would have no cause against the State for any damages which they might otherwise have sustained. The establishment and construction of the highway over and across plaintiffs' land, according to the deed, to carry out the general road program of the State, necessarily caused "structural changes" in grade and drainage. Plaintiffs, by their solemn deed, waived, in express terms, "all their claims, rights, and interest in and to any claim for damages and compensation by reason of the establishing and construction of the said Highway No. 6 over and across" their land; therefore, in the absence of some legal defense to void the effect of their deed, which is not present either in pleadings or proof, the grantors are estopped to claim damages resulting from "structural changes" in the establishment and construction of the highway across their land.

The conclusion is inescapable that, the force and effect of plaintiffs' deed foreclosed recovery for damages against the State for "structural changes". The deed, unassailed, justifies this court in reversing the judgment of the court below, and rendering judgment for defendants.

▮ Plaintiffs present numerous assignments of error, attacking the action of the trial court on purely procedural matters, some of which, we think, in all events, justify a reversal of the case; and, if we be in error in rendering judgment for defendants perforce of the deed, the cause should be remanded to the court below for another trial. Plaintiffs alleged that, because of changes in the grade and drainage of the highway, the real estate involved in the suit had been damaged in the sum of $6,000, and the personal property in the sum of $511.60—a total of $6,511.60. Special Issues Nos. 4 and 5, submitted to the jury, read: "Issue Number 4: What do you find from a preponderance of the testimony to have been the reasonable cash market value of plaintiffs' *property in question* immediately prior to the change in the structural course of the water in question?"; to which the jury answered $5,000; "Issue Number 5: What do you find from a preponderance of the testimony to have been the reasonable cash market value of plaintiffs' *property in question* (emphasis ours) immediately after said change, or within a reasonable time after said change was made, if it was made?"; to which the jury answered $2,250. Special Issues Nos. 6 and 7 were then submitted, making specific inquiry as to the amount of damage plaintiffs suffered to their *personal property;* to which the jury answered $500. Obviously, Issues 4 and 5, making inquiry affecting damage to plaintiffs' "property", and Issues 6 and 7, affecting damage to their "personal property"; and, the jury having answered 4 and 5, in effect, that plaintiffs suffered $2,750 to their "property"; and, 6 and 7, that plaintiffs suffered $500 to their "personal property", are submissions and findings of double recovery. The term "property" employed in Issues 4 and 5 is broad enough to embrace both real and personal property. Therefore, Issues 4 and 5, as well as 6 and 7, involved findings of damage to plaintiffs' personal property. The judgment of the court followed the findings of the jury, assessed plaintiffs' damages in the total sum of $3,250, which clearly includes a double recovery for the personal property.; no other conclusion can be reach-

ed from the verdict of the jury. Therefore, we sustain defendants' assignment.

■ The court having submitted all the issues to the jury on the theory that a "structural change" had been made in the roadbed and water-course, which caused the damage to plaintiffs' property, we think that, if damages could be sustained on the theory of structural change, the words or phrase "structural change" should have been defined. Especially is this true, since plaintiffs do not plead, in terms, a "structural change", but do plead in general terms that defendants changed the drainage ditch by making it narrower, damming same and otherwise altering it; and, the Resolution of the Legislature also authorizes suit for damages arising from negligence attributable to the defendants. A "structural change", within the contemplation of plaintiffs' pleadings and the Resolution of the Legislature, means, as defined in Volume 5, Words and Phrases, 5th Ser., p. 534: " * * * such a change as to affect a vital and substantial portion of the premises, as would change its characteristic appearance, the fundamental purpose of its erection, or the uses contemplated, or a change of such nature as would affect the very realty itself—extraordinary in scope and effect, or unusual in expenditure." It must be such a vital and material change in the ditch and water-shed as to cause damage by reason of such change, extraordinary in scope and effect; not immaterial or trivial changes, but such as will render the State liable in damages for its construction, or for making the change. As the term "structural change" appeared in the court's charge without proper definition, it devolved upon the jury to determine its meaning, whether that character of change had been made, and, if so, whether it was a direct and proximate cause of plaintiff's damages. We think "structural change" is a legal term and should have been defined.

■■ It is evident from the record that plaintiffs' pleadings base the suit on negligence of the defendants, and the Resolution authorizing the suit, in effect, directs that it be brought on negligence; whilst the suit, as presented by proof and the charge of the court, was based on "structural changes" in the ditch and drainage, causing the damages to plaintiffs' property. Defendants, in appropriately submitted issues, requested findings of the jury on the question of negligence in the construction of the ditch, and whether such negligence directly or proximately caused or contributed to cause the damages claimed by plaintiffs. The court refused to submit the cause to the jury on the issue of negligence. In this, we think the court erred. The cause was tried on an entirely different theory from that disclosed in plaintiffs' petition. Plaintiffs alleged that, narrowing the ditch, damming and otherwise altering it, caused the flood waters to back up and overflow on plaintiffs' property; and, specially alleged: "That the acts of the defendants above complained of in changing the drainage structure and permitting it to remain in its changed condition are negligent acts, and said negligent acts, acting separately and concurrently, directly and proximately brought about and produced each and very item of damage set up herein." We think the issue on negligence and the attendant issue of proximate cause are important inquiries, as reflected in the pleadings of the parties, and the only theory on which the Legislature authorized the suit. A suit cannot be brought against the State, unless clearly authorized by resolution of the Legislature, and the suit must follow the clear intent of the Legislature expressed in the resolution. However, had the suit been tried on the theory of negligence in the construction of the highway, another vital question would have arisen— whether or not the State would be liable for negligence of its employes. That question, however, is not here presented; we express no opinion.

As stated above, it is our opinion the judgment of the court below must be reversed and here rendered for appellants; accordingly, it is so ordered.

Reversed and rendered.