Person *v.* Miller Levee District No. 2.

4-6389                                        154 S. W. 2d 15

Opinion delivered June 2, 1941.

*L. K. Person* and *Paul Jones,* for appellant.

*Henry Moore, Jr.,* for appellee.

Smith, J.   Appellant, L. K. Person, brought suit to recover damages resulting from the construction of a loop levee through and across the north half and the southwest quarter of section 13, township 15 south, range 26 west.   There was a judgment in his favor for $1,306.80, from which he has appealed.

This land is protected from the flood waters of the Red River by a levee built by Miller Levee District No. 2. Because of caving banks, the original levee was regarded as insecure.   It was shown that the average rate of caving of the banks of the river over a period of ten years had been 25 feet a year, and at one point in this section 13 the river was only 40 feet from the levee, and for a quarter of a mile the river was not farther than 100 feet from the top of the levee.   The aid of the federal government was invoked and promised to build a loop levee, but upon the condition that the necessary right-of-way should be secured without cost to the government, and that the government should be indemnified against lia-

bility for any damages incident to the construction of the loop levee.

The application for this aid was made May 17, 1938, and a survey was made by the government engineers, and a map of the survey was made under date of July 19, 1938. The loop levee was necessary for the protection from overflow of about 75,000 acres of land, largely in cultivation, and the safety of the two thousand to two thousand five hundred people living thereon, and it was desired that this loop levee be constructed in time to afford protection against the annual rise of the river during the winter and spring.

Negotiations for the necessary right-of-way were begun with the riparian owners whose lands were affected, and Mrs. May B. Dale was one of this number. She owned a tract of land adjacent to section 13. When these negotiations were begun, the Texarkana National Bank had title to the land in section 13, having acquired title in the manner recited in the opinion in the recent case of *Person* v. *Miller Levee District No. 2, ante* p. 173, 150 S. W. 2d 950. These negotiations, so far as section 13 is concerned, were conducted by a committee of the levee district with the president of the bank and its officer having charge of its lands. The testimony in regard to these negotiations is voluminous and to some extent conflicting. The point about which they disagreed was that of compensating the bank for the damages to the land which would be left on the river side of the levee without flood protection. The president of the bank desired compensation for this damage, which the committee of the levee district declined to pay.

The lands of Mrs. Dale were in the same situation, and the committee of the levee district agreed with her to compensate all her damages by paying her $40 per acre for all of her lands taken for levee purposes, and moving her houses back of the levee. The president of the bank was advised of this situation, and knew that the levee district would not agree to pay damages resulting from the failure to afford levee protection to a portion of the land.

The time arrived when the levee district could no longer delay, and it was determined to institute condemnation proceedings if the right-of-way could not be acquired by agreement. Accordingly, a meeting of the board of directors was called on November 3rd to close the deal for the right-of-way or to institute condemnation proceedings. The right-of-way committee reported that they had reached an agreement with Mrs. Dale, whereby she would be paid $40 per acre and have her plantation houses moved at the cost of the levee district. The chairman of the board called the president of the bank over the telephone from the room where the board meeting was in session. Other members of the board present in the room could hear only one end of the conversation, but from this they knew what was being said. At the conclusion of the telephone conversation the chairman reported to the other members that the president of the bank had accepted the same terms offered Mrs. Dale.

The federal engineers were notified that the right-of-way had been procured, and signs were at once placed on the land by the government engineers showing the right-of-way to be used, and the construction contract was let on November 8, 1938, and the removal of the houses off the right-of-way began between the middle of November and the first of December. Before moving the houses, the district's engineer asked the bank's land man about their removal and relocation, and was told to consult the tenant in possession, and this was done. All the right-of-way was cleared during January and the work of moving earth began in the early part of February. The levee was completed in May, 1939. The land was measured, and it was ascertained that 32.67 acres of the land had been taken. This acreage at $40 per acre amounted to $1,306.80, and a check for that amount was delivered to the president of the bank, who, upon examination of the check, found that it was tendered in full satisfaction of all damages, whereupon he declined to accept the check and returned it.

In the meantime the bank had, on December 8, 1938, contracted to sell the land to one Lowe, it being agreed between the bank and Lowe that any damages collected

from the levee district should be credited on the purchase price of the land. The contract between the bank and Lowe expired, by its terms, December 31, 1938, but at some time before that date, and in some manner not entirely clear, appellant, Person, acquired the contract from Lowe with the consent of the bank. However, as the result of an independent trade between the bank and appellant, the bank, on March 27, 1939, conveyed the land to appellant.

On August 4, 1939, appellant, Person, filed suit for the damages to the land, upon the allegation that he was the owner of the ''equitable right of redemption'' of the land. On January 11, 1940, the bank filed an intervention, in which it alleged that it had, on March 27, 1939, conveyed the land in controversy to appellant, and had, on December 21, 1939, executed a supplement to said deed to appellant containing the following recitals:

''Whereas, in the negotiations leading to the execution and delivery of said deed it was the understanding on the part of the grantor that all rights of the grantor entitling it to any compensation for land taken, and damages done to land not taken, which it might collect or be entitled to collect, from said Miller Levee District No. 2, through negotiations or otherwise should be credited to or pass to the grantee as his property incidental to the land as conveyed by said deed, and it was so understood by grantee; and

''Whereas, said grantor has collected nothing from said Miller Levee District No. 2, and grantee being entitled to the claim and the right to collect or enforce payment of same for any part of the land taken and any damage done to any land not taken which is included in said deed, and it being understood by both parties to said deed that all such rights passed by said deed to grantee; and as grantee is the legal and equitable owner of same, and it being the desire of the grantor to remove any doubt as to this,'' etc.

After this intervention was filed the levee district, on March 4, 1940, filed a motion to transfer to equity, which motion was sustained over the objections and exceptions of appellant. Thereafter the cause proceeded

as a suit pending in the chancery court, and after hearing much testimony a decree was rendered upon the following finding of facts recited in the decree:

"That, the defendant levee district purchased from the Texarkana National Bank on or about the third day of November, 1938, and that on said date the Texarkana National Bank, then being the owner of the land, sold to the defendant the right-of-way needed for levee purposes over and across the lands at issue in this cause, with all the appurtenances and damages incident thereto.

"That, the price to be paid for said right-of-way was the same price paid Mrs. May B. Dale for right-of-way over and across her land immediately adjoining and lying south of the lands at issue in this cause. Said price being the sum of $40 per acre, and the agreement on behalf of the defendant to move without expense to the bank all houses and buildings from said right-of-way or on lands outside of said right-of-way to the inside, or land side, so they would be protected by the new levee.

"The court further finds that the defendant, with the knowledge and consent of said bank, immediately after purchasing said right-of-way from the bank, entered into possession of same, moved the houses in accordance with the agreement and delivered possession of the land to the engineers of the U. S. Government who caused the levee to be built as at present located over and across said right-of-way.

"The court further finds that immediately after the completion of the building of said levee the lands were measured and the defendant tendered to the Texarkana National Bank the agreed price for the lands taken and used at $40 per acre, to-wit: $1,306.80, and that said sum has been tendered into court by the defendant, on date answer was filed, and the tender has at all times been kept in effect by the defendant.

"The court further finds that by deed of date December 21, 1939, now of record in Deed Record Book 124, p. 48 of the county of Miller, state of Arkansas, the plaintiff, Texarkana National Bank, conveyed unto its joint plaintiff, L. K. Person, all rights and claims that it had against Miller Levee District No. 2 for the lands

taken for right-of-way purposes, over and across the land at issue, and authorized said L. K. Person upon the collection of the consideration for said right-of-way and damages, to receipt for all moneys collected and to execute a complete release to the defendant, levee district, for said moneys and from any further liability.

"The court further finds that the agreed price of $40 per acre was for the use of the land taken for levee purposes, and also for all injuries or damages connected with or incident to the erection of said levee over and across said right-of-way."

If this finding of facts is not contrary to the preponderance of the testimony, we are relieved of the necessity of considering and deciding several interesting questions discussed in the briefs of opposing counsel; and we think it is not.

Upon the issues joined, we think there was no error in transferring the case to the chancery court. The plaintiff alleged only an equitable title (the nature of which is explained in the recent case of *Person* v. *Levee District, supra*) to the land which had been conveyed to him when the bank sold the right-of-way to the levee district. The legal title was conveyed by the subsequent deed from the bank, whereas the right-of-way had been previously acquired from the bank for an agreed consideration.

The bank, with knowledge that possession had been taken of the levee right-of-way and under an agreement, as found by the court, for an agreed consideration, contracted to sell the land to Lowe. According to appellant's pleadings, the bank had agreed to the sale of its contract with Lowe to appellant, and had deeded the land to appellant on March 27, 1939, and had later, on December 21, 1939, conveyed to appellant the right to collect from the levee district any compensation for lands taken or damaged, which right the bank was apparently holding as trustee for appellant under its trade with him. After the rendition of the judgment for damages, appellant assigned the judgment to the bank. The state of this title and the respective interests of the parties was, we think, a matter cognizable in equity.

Here, the levee district had acquired the equitable title to the land through its oral agreement with the bank, and the right to have the legal title vested in it upon paying this acreage price after taking possession of the land. After this had been done the bank contracted to sell to Lowe who sold his contract to appellant, and the bank, still later, sold and delivered the land to appellant, who had knowledge of the possession of the land by the levee district. The true state of this title was, therefore, a question cognizable in equity.

The statute of frauds is pleaded against the assertion of the title in the levee district; but it was said in the case of *Pledger* v. *Garrison,* 42 Ark. 246, that ". . . no principle is more firmly established than that delivery of possession under a parol contract for the sale of land takes the case out of the statute of frauds." That holding has since been reaffirmed in many cases, one of the latest being that of *Ferguson* v. *The C. H. Triplett Co.,* 199 Ark. 546, 134 S. W. 2d 538.

Here, under the findings of the trial court, which we think the testimony sustains, there were no damages to be assessed. These were compromised under an agreement to pay $40 per acre for the land actually taken, and to remove the houses, which was done. It remained only to ascertain the acreage taken, and this was done as soon as that fact could be ascertained by a survey, the accuracy of which is not questioned.

In other words, the levee district, through its trade with the bank, under which possession was taken and the levee constructed, acquired the same title it would have acquired had a deed been made to the right-of-way. The agreement to pay $40 per acre for the land taken and to remove the houses is, in effect, a consideration for the deed to which the levee district became entitled, and this was intended to compensate the right-of-way damages.

It was held in the case of *Daniels* v. *Board of Directors of St. Francis Levee District,* 84 Ark. 333, 105 S. W. 578, that where a landowner granted to a levee district a right-of-way across his land for the purpose of constructing a levee, he cannot thereafter sue the district for damages which resulted from its construction or

maintenance if the levee was constructed and maintained in a skillful manner. There is no allegation or proof here of improper construction or maintenance.

The decree is, therefore, correct and will be affirmed.