FRED L. SALE and JACK WESTALL, Trustees of the J. M. WESTALL TRUST, and MYRTLE SALE, MINNIE W. BOEHM, MARY WESTALL, JACK WESTALL and ANNIE WESTALL, Cestuis Que Trustent, Petitioners, v. STATE HIGHWAY & PUBLIC WORKS COMMISSION, Respondent.

(Filed 25 November, 1953.)

**1. Eminent Domain § 22—**

Where the State Highway and Public Works Commission purchases a right of way under authority of G.S. 136-19 it acquires the same rights as though it had acquired the land by condemnation.

**2. Eminent Domain § 21 ½ : Highways § 8c—**

While neither the State nor its agencies can take private property for public use without just compensation, the State Highway and Public Works Commission cannot be sued in contract, and the sole remedy by the owner of lands to recover compensation for its taking by the Commission is by a proceeding in accordance with statute. G.S. 136-19, G.S. 40-12 *et seq.*

**3. Same—Where petition seeks compensation for the taking of land and evidence supports recovery for failure to pay compensation as stipulated in right of way agreement, nonsuit for variance should be allowed.**

The owners of land filed a petition in the usual form pursuant to G.S. 136-19 and G.S. 40-12 *et seq.* to recover compensation for land taken for a right of way without reference to any option or right of way agreement. Petitioners introduced in evidence an option and right of way agreement requiring respondent, as a part of the consideration for the taking of the land, to remove certain buildings and reconstruct them, in as good condition as they were before moving, on other lands of petitioners, and to replace certain paving and fencing. Petitioners also introduced evidence that the buildings were destroyed by fire during the process of removal, and that the paving and fencing had not been replaced as stipulated.

*Held:* Nonsuit should have been entered for material variance between allegation and proof.

**4. Pleadings § 24—**

A party must succeed, if at all, on the case as set up in his complaint, and the proof must correspond to the allegations.

**5. Trial § 23f—**

Where there is a material variance between the allegation and proof, nonsuit should be allowed.

**6. Appeal and Error § 5—**

Where the disposition of respondent's appeal renders academic the questions presented on petitioners' appeal, petitioners' appeal will be dismissed.

APPEAL by petitioners and respondent from *Phillips, J.,* at February "A" Civil Term 1953 of BUNCOMBE.

This is a special proceeding instituted by petitioners by virtue of G.S. 136-19 and G.S. 40-12 *et seq.* before the Clerk of the Superior Court of Buncombe County to recover compensation for the alleged taking of an easement of right of way over property of the petitioners for the construction of a bridge over the French Broad River for the relocation of U. S. Highways Nos. 19 and 23 in the City of Asheville.

Fred L. Sale and Jack Westall are trustees of the J. M. Westall Trust, and Myrtle Sale, Minnie W. Boehm, Mary Westall, Jack Westall and Annie Westall are *cestuis que trustent,* and they are the petitioners herein. The petitioners own a tract of land situate on West Haywood Street and Riverside Drive in Asheville.

On 19 May 1948 Jack Westall and Fred L. Sale, trustees of the J. M. Westall Trust, executed and delivered an option to the respondent. These are its material parts. In consideration of the sum of one dollar paid to the J. M. Westall Trust by the respondent, the Westall Trust granted to the respondent an option for 180 days to purchase a right of way for highway purposes over, upon and across its lands situate in the City of Asheville—said right of way being 75 feet in width, and described with particularity. This option also includes the purchase price of a small garage building. Other buildings on the right of way were to be removed therefrom, and reconstructed on property belonging to the trust, under the general contract and at the expense of the respondent. That the Westall Trust will execute, and deliver to the respondent at its request on or before 19 November 1948 a good and sufficient deed or agreement for the right of way across its lands, provided the respondent pay to it the sum of $3,622.50, and remove, and reconstruct said buildings. It is further agreed that the consideration to be paid shall be paid, and received in full payment of the purchase price of the right of way, and in full compensation for all damages, if any, resulting from the granting of

this right of way and the construction of streets, roads and sidewalks upon the right of way.

In July 1948 the respondent exercised this option, and the Westall Trust by Fred L. Sale, Trustee, executed and delivered to the respondent in accordance with the terms of the option a right of way agreement. This agreement was not signed by Jack Westall, Trustee, and is not dated. This agreement released the respondent from all claims for damages by reason of said right of way, and of the past and future use thereof by the respondent, its successors and assigns for all purposes for which the respondent is authorized by law to subject the right of way. This agreement provided that the small garage purchased by the respondent is to be demolished, and removed from the right of way by the respondent, and that the respondent is to remove at its expense one two-story frame warehouse and such portion of lumber shed as is within the right of way limits of the project from the right of way, and pay to the trust $3,622.50, which amount shall be in full settlement for the right of way, the small garage, and any and all damages to the property due to construction of this project. The buildings on the right of way to be removed, and reconstructed as set forth in the option. It was further provided there are no conditions to this agreement not expressed herein. Then follows general covenants of warranty of title.

The petitioners introduced in evidence the option and right of way agreement.

The petitioners introduced in evidence the General Contract referred to in the option and right of way agreement. All of the General Contract is not in the record. The parts of it material for the purposes of this appeal are summarized below. General buildings or structures shall be prepared for, removed, and placed in their new locations, as shown on the plans, or as designated by the engineer, and left plumb and level, and in as good condition in all respects as they were before moving. New concrete driveways, or concrete driveways constructed to replace existing concrete drives, shall be Class "B" concrete, and shall be of the same thickness as existing driveways, or as specified in the plans. Payment will not be made for this work until an owner's release is secured from the property owner, certifying that the work has been performed to the owner's satisfaction, and that the respondent and the contractor are released from all responsibility in connection with this work. In extreme cases, when in the opinion of the right of way engineer, this requirement is being abused by the property owner, the requirement of the above release may be waived.

A release in accord with the terms of the option and the right of way agreement was also executed by Fred L. Sale, Trustee, and delivered to the respondent. It was not introduced in evidence.

About the time the right of way agreement and release were executed, and delivered to the respondent, the respondent tendered to the trustees of the J. M. Westall Estate its properly issued cheque in the amount of $3,622.50. The trustees of the trust refused to accept it in July 1948 and also upon two later occasions.

The work of constructing the bridge over the French Broad River was done by the Bowers Construction Co. The work was begun about 31 May 1948, and was completed 20 October 1950.

The petitioners, over the objection of the respondent, introduced in evidence a copy of a contract between the Bowers Construction Co., and G. E. Crouch, a subcontractor, who was to remove the buildings referred to in the option and right of way agreement at the price of $11,500.00.

In the process of moving the ridge of the roof of the two-story warehouse was broken in, though it was in continuous use for the storage of material by J. M. Westall & Co., and the Rock Wool Insulating Co. as renters. During the process of removal and reconstruction of the buildings on the right of way by Crouch, subcontractor, and before the work was complete, they were destroyed by fire of unknown origin on 13 September 1948. Other adjacent structures were also burned.

The trustees of the trust refused to accept the cheque of $3,622.50 from the respondent because the work of removing and reconstructing the buildings, as provided for in the option and right of way agreement, has not been completed, and had not been at the time of the fire. They refused to sign an owner's release, as provided for in the General Contract, because the work of removal and reconstruction of the said buildings has not been performed to their satisfaction.

The petitioners offered evidence that J. M. Westall & Co., dealers in lumber and building material, has brought an action against Bowers Construction Co. for damages for the destruction of personal property in the warehouse being removed from the right of way allegedly caused by the negligence of the construction company, which action has not been tried.

The petitioners also offered evidence that debris was left on the property which it would cost $200.00 to remove, and that a highway engineer said he thought he could get through $700.00 to build a driveway to the removed warehouse.

The petitioners offered evidence as to the reasonable market value of the property used by the respondent as a right of way and as to the value of the property burned.

The petitioners contend that the respondent has not carried out all the provisions of the right of way agreement and General Contract, therein referred to, in that the buildings to be removed and reconstructed on property belonging to the trust, had not been placed in their new location

plumb and level and in as good condition in all respects as they were before moving; that their destruction resulted from the taking; that paving had not been replaced; that the fence on the property had not been replaced; and that they and it have been unable to agree as to the value of the property taken by the respondent and the damage to that not taken. Therefore, they instituted this proceeding.

The petitioners admitted that the right of way agreement carried out the provisions contained in the option.

The petitioners do not contend that the option and right of way agreement are invalid, neither do they contend that the respondent has taken land beyond the limits of the option and right of way agreement.

The petition makes no reference to the option, right of way agreement, and the General Contract. It is drawn in the usual form when the respondent has taken over property for a public use without instituting condemnation proceedings.

In the Superior Court two issues were submitted to the jury. The jury awarded substantial damages, but found that no benefits, general or special, had accrued to petitioners.

Judgment was signed in accordance with the verdict, and both petitioners and respondent appeal assigning errors.

*R. Brookes Peters, General Counsel State Highway & Public Works Commission, Gudger, Elmore & Martin, Associate Counsel, for respondent appellant.*

*Uzzell & DuMont for petitioner appellants.*

## THE RESPONDENT'S APPEAL.

PARKER, J. At the close of the petitioners' evidence—the respondent offered none—the respondent demurred to the jurisdiction of the court. The demurrer was denied. This is respondent's exception No. 90, and forms the basis of its assignment of error No. 29. The respondent then moved for judgment of nonsuit. This motion was denied, and is respondent's exception No. 92, forming its assignment of error No. 31.

The respondent had authority by virtue of G.S. 136-19 to acquire the right of way by purchase, as it did.

The purchase of this right of way vested in the respondent the same rights as though it had acquired the land by condemnation. Lewis Eminent Domain (3rd Ed.), Sec. 474 (293); *St. Louis & B. Ry. Co. v. Van Hoorebeke,* 191 Ill. 633, 61 N.E. 326; *St. Louis, etc. R. R. v. Hurst,* 14 Ill. App. 419; *Roushlange v. Chicago & A. Ry. Co.,* 115 Ind. 106, 17 N.E. 198; *Hileman v. Chicago Gt. W. Ry. Co.,* 113 Ia. 591, 85 N.W. 800; *De Vore v. State Highway Com.,* 143 Kan. 470, 54 P. 2d 971.

In Nichols on Eminent Domain (3rd Ed.) (1950) Vol. 3 pp. 150-151 it is said: "One who agrees to give his land for a public work does not necessarily thereby release his claim for damages to his remaining land by the construction of the work, although it is usually held that, in the absence of any special circumstances or conditions indicating a contrary intent, a conveyance of land for a specified public use constitutes a release of all damages to which the owner of the property would be entitled if it was taken by eminent domain for the same purpose. One who has released his claim for damages arising from the taking is not thereby barred from an action for damages arising from the negligent manner in which the work is done." Citing cases from Georgia, Illinois, Iowa, Kentucky, Louisiana, Minnesota, Nebraska, New York, Pennsylvania, South Carolina, Texas, Vermont, West Virginia for the first sentence quoted, and cases from Oregon and Pennsylvania for the second sentence quoted.

In 29 C.J.S. Eminent Domain, Sec. 206 it is said: "Where a landowner has granted a right of way over his land, he must look to his contract for compensation, as it cannot be awarded to him in condemnation proceedings, provided the contract is valid, and all its conditions have been complied with by the grantee . . ."—citing in support of the text *De Vore v. State Highway Commission, supra; State v. Lindley,* Civ. Appeals of Texas, 133 S.W. 2d 802; *Thomas E. Jeremy Estate v. Salt Lake City,* 87 Utah 370, 49 P. 2d 405; *Person v. Miller Levee Dist. No. 2,* 202 Ark. 876, 154 S.W. 2d 15; *Shortle v. Terre Haute & I. R. Co.,* 131 Ind. 338, 30 N.E. 1084; *Heimburg v. Manhattan Ry. Co.,* 162 N.Y. 352, 56 N.E. 899. The cases cited support the text. To the same effect *Stoops v. Kittanning Tel. Co.,* 242 Pa. 556, 89 A. 686.

In Lewis Eminent Domain (3rd Ed.) Sec. 474 (293) it is said: "The conveyance of land for a public purpose will ordinarily vest in the grantee the same rights as though the land had been acquired by condemnation. The conveyance will be held to be a release of all damages which would be presumed to be included in the award of damages if the property had been condemned. The grantor therefore cannot recover for any damages to the remainder of his land which result from a proper construction, use and operation of works upon the property conveyed. Damages which result from improper construction . . . or negligence of any kind, may, of course, be recovered."

Nichols, *ibid.,* p. 148 says that where private property is taken by proceedings in exercise of the power of eminent domain, the right of the owner to receive compensation is ordinarily satisfied by payment. However, there are several circumstances under which the owner's right may be extinguished or barred without payment, for instance, (1) by release or agreement to claim no damages; (2) by waiver or estoppel; (3) by statute of limitations; or (4) by laches. On p. 149 the text states: "It

frequently happens that the owners of land through which it is proposed to lay out a public improvement are anxious to have the plan carried out, and are willing to donate the necessary land on account of the benefit which the improvement will confer upon their other property. In such a case the most approved practice is for the owners to execute deeds of the land to the corporation about to construct the improvement, protecting themselves, if necessary, by conditions subsequent contained in the deeds, or by delivering the deeds in escrow, to be held until the improvement has been completed. Such deeds are unquestionably valid, and if the corporation subsequently, to cure any possible defects in its title, effects a taking of the same land by eminent domain, the grantors of the deeds are not entitled to additional compensation."

In *Allen v. R. R.,* 102 N.C. 381, 9 S.E. 4, the defendant proposing to construct a branch road from a point in the County of Wilson on its line to a point on the boundary line between the State and the State of South Carolina, with a view to this end procured from the plaintiff free and perpetual right of entry to the plaintiff's land, an easement therein for the location of its contemplated railway, upon any part wherever the company may select its route. The deed conveyed the easement, with all the incidental rights and privileges necessary to its full enjoyment. The Court said: "The deed, if effectual, allowed the company to select its route, and would bar all claims for damages incidental to and necessarily incurred in exercising the conferred right."

It has never been held in this jurisdiction that the State or its agencies can take private property for public use without just compensation. *Moore v. Clark,* 235 N.C. 364, 70 S.E. 2d 182; *Lewis v. Highway Com.,* 228 N.C. 618, 46 S.E. 2d 705. The Highway & Public Works Commission cannot be sued in contract. *Dalton v. Highway Com.,* 223 N.C. 406, 27 S.E. 2d 1; nor in tort, *McKinney v. Highway Commission,* 192 N.C. 670, 135 S.E. 772; *Pickett v. R. R.,* 200 N.C. 750, 158 S.E. 398. A statutory method of procedure is provided for adjusting and litigating claims against the Highway & Public Works Commission, and the remedy set out in the statute is exclusive and may alone be pursued. *Latham v. Highway Com.,* 191 N.C. 141, 131 S.E. 385; *Moore v. Clark, supra.*

The identical contracts offered in evidence in this case by the petitioners were before this Court in *Brown v. Construction Co.,* 236 N.C. 462, 73 S.E. 2d 147. In that case Brown and wife trading as Rock Wool Insulating Company sought to recover damages for the loss by fire of goods stored in the warehouse referred to in this case. This Court held in referring to the contracts that "the matter of the removal and reconstruction of the buildings is made a part of the consideration to be paid by the State Highway & Public Works Commission."

Applying the facts to the law as above stated, we arrive at these conclusions. The petitioners introduced in evidence the option, the right of way agreement and the General Contract. The petitioners admitted that the right of way agreement carried out the provisions contained in the option. They do not contend, nor have they offered any evidence, that the contracts are invalid; neither do they contend, nor have they offered evidence, that the respondent has taken land beyond the limits of the option and right of way agreement. Under these facts the petitioners having granted a right of way over their land and having released the respondent from all claims by reason of said right of way for all purposes for which the respondent is authorized by law to subject the right of way, must look to their contract for compensation, as it cannot be awarded to them in condemnation proceedings, provided all the conditions of the contracts have been complied with by the respondent. The petitioners contend that the removal and reconstruction of the buildings, the replacing of paving and the replacing of a fence were part of the consideration to be paid them and that has not been done, and the fire was caused by negligence. The respondent contends that the replacing of the paving and the fence were not required by the contracts. If the petitioners can allege, and prove their contention that they have been damaged by the negligent manner in which the work was done, or that they have been damaged by the respondent's failure without lawful excuse to perform any of the work it contracted to do they can recover such damages in a special proceeding under G.S. 136-19 and G.S. 40-12 et seq., provided the petitioners and respondent are unable to agree as to the amount of such damages, if any.

If the petitioners are to succeed at all, they must do so on the case set up in their complaint. *Moore v. Clark, supra; Suggs v. Braxton,* 227 N.C. 50, 40 S.E. 2d 470; *Simms v. Sampson,* 221 N.C. 379, 20 S.E. 2d 554; *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14, 139 A.L.R. 1147. Their petition makes no reference to the option, right of way agreement and the General Contract; it is drawn in the usual form when the respondent has taken over property for a public use without instituting condemnation proceedings, and the parties are unable to agree as to the price of property taken, and the case was tried on that theory though the petitioners introduced in evidence the option, right of way agreement and General Contract. The proof materially departs from the allegations. "It has so often been said as to have grown into an axiom that proof without allegation is as unavailing as allegation without proof. There must, under the old or new system of pleading, be *allegata* and *probata,* and the two must correspond with each other. When the proof materially departs from the allegation, there can be no recovery without an amendment." *Talley v. Granite Quarries Co.,* 174 N.C. 445, 93 S.E. 995; *Whichard v.*

*Lipe, supra; Aiken v. Sanderford,* 236 N.C. 760, 73 S.E. 2d 911. This variance between the allegations and proof requires a reversal on the ruling on the motion to nonsuit.

The case also seems to have been tried on a misapplication of the pertinent principles of law.

The respondent's assignment of error No. 29 that the court had no jurisdiction is without merit.

We refrain from discussing the case further, for if the petitioners pursue their case further, then upon a retrial the *allegata* and *probata* may present new and various phases of law and fact.

The judgment is ordered

Reversed.

## PETITIONERS' APPEAL.

By reason of the reversal of the judgment entered in the court below in this proceeding on the respondent's appeal, the questions presented for our decision on the petitioners' appeal have become academic. It is ordered as to petitioners' appeal

Appeal dismissed.